In re Kevin M. McCORMICK, Debtor.

Kathryn A. BELFANCE, Trustee of the Estate of Kevin M. McCormick, Plaintiff,

v.

BANCOHIO/NATIONAL BANK, Defendant.

Bankruptcy No. 579–1045.
Adversary No. 580–0001.

United States Bankruptcy Court, N. D. Ohio.

Sept. 3, 1980.

Kathryn Belfance, Akron, Ohio, Trustee.

Frederick S. Corns, Akron, Ohio, for BancOhio Nat. Bank.

### FINDING AS TO COMPLAINT TO RECOVER PERSONAL PROPERTY

H. F. WHITE, Bankruptcy Judge.

The Trustee filed a complaint to recover $647.48 from BancOhio/National Bank, a creditor of the debtor. The trustee alleges that the debtor made the payment on an antecedent debt within 90 days prior to the filing of his petition for relief under the Bankruptcy Code. Further the trustee claims that the debtor was insolvent and the payment resulted in the creditor receiving a greater percentage of payment of its debt than other creditors.

The trial was held and this Court makes the following finding of fact and law.

### FINDING OF FACT

1. On November 27, 1979 the debtor, Kevin Michael McCormick, filed a voluntary petition in Bankruptcy under Chapter 7 of Title 11, United States Code.

2. BancOhio/National Bank was scheduled as a secured creditor with a claim in the amount of $6,500.00. The security was scheduled as a 1975 Pontiac Transam which the debtor valued at $3,000.00.

3. City Loan was scheduled as a secured creditor with a claim in the amount of $2,200.00. The security was scheduled as a stereo which the debtor valued at $250.00. All other creditors of the debtor were scheduled as unsecured creditors with claims totaling $1,528.73.

4. The debtor's total scheduled assets amount to $3,835.00, which includes the car valued at $3,000.00.

5. Kathryn Belfance was appointed interim trustee and serves as trustee as provided for under 11 U.S.C. § 702(d) of the Bankruptcy Code.

6. On January 8, 1980 the trustee agreed to the application and order to abandon the 1975 Pontiac to BancOhio/National Bank as the automobile had a probable value of $2,950.00 and the amount claimed due and owing by BancOhio was $4,446.26.

7. BancOhio took the automobile as security for an installment loan it made to the debtor in 1978. Installments on said loan were payable on the 15th of each month in the amount of $219.16.

8. The debtor's last three payments of $219.16 were made on August 16, 1979, September 19, 1979, and October 15, 1979. No payment was made in November 1979.

9. BancOhio/National Bank presented no evidence to rebut the presumption, under 11 U.S.C. § 547(f), of the debtor's insolvency on and during the 90 days preceding the filing of the petition for relief.

10. The original loan and security interest was made in 1978.

## ISSUES

1. Has the trustee proven the elements necessary to void a transfer as a preference under 11 U.S.C. § 547(b)?

2. Is BancOhio/National Bank entitled to claim a setoff under section 553 of the Bankruptcy Code?

3. Are the installment payments made by the debtor excepted under section 547(c)(2) from treatment as voidable preferences?

## DISCUSSION OF LAW

The Trustee had filed a complaint to recover the amount of three installment payments of $219.19 each, which the debtor made to BancOhio on August 16, 1979, September 19, 1979, and October 15, 1979 pursuant to an automobile loan contract signed in 1978.

In her complaint the trustee alleges that the installment payments are voidable preferences under section 547(b) of the Bankruptcy Code. In its answer, BancOhio maintains that the payments are not avoidable because they did not diminish the debtor's estate as required by section 547(b)(5). BancOhio argues alternatively that it may claim the payments as a setoff under section 553 and that the payments also fall within the scope of section 547(c)(2), which excepts certain transfers made within the ordinary course of business from avoidance as a preference.

■ To recover property under the preference avoidance provisions of the code, the trustee must show that the allegedly preferential transfer meets specific criteria. The transfer must have been made to or for the benefit of a creditor, in payment of an antecedent indebtedness, while the debtor was insolvent and must have occurred within ninety days prior to the filing of the bankruptcy. The payment must have enabled the creditor to receive more than it would have received in a liquidation proceeding under the Bankruptcy Code, had the payment not been made. These requirements are enumerated in section 547(b) which provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)

As applied to the matter before the Court, section 547(b) subsections (4)(A) and (5) require the trustee to prove that the debtor made the payments within the ninety–day preference period and that Banc-Ohio received more than it would otherwise have received had the payments not been made. If the trustee fails to establish these elements, the Court cannot sustain the complaint to avoid the transfer.

The first of the disputed payments is not a preference, since the debtor did not make that payment within the ninety–day period preceding the date of filing his petition in bankruptcy. The preference period began on August 26, 1979, ninety days prior to the November 27, 1979 filing. The debtor had already made his car payment several days earlier on August 16, 1979. The Court must therefore overrule the complaint of the trustee to recover the amount of the August 16, 1979 payment.

However, the court will sustain the complaint of the trustee to recover the amount of the payments made on September 19, 1979 and October 15, 1979, since these payments meet the requirements of section 547(b)(4)(A).

The debtor while insolvent paid these installments within the ninety–day preference period. The payments enabled Banc-Ohio to receive more than it would have received had it been paid only in the liquidation proceedings according to the provisions of the Code.

■ BancOhio argues to the contrary and asserts that since the Bankruptcy Code provides for the payment of secured creditors in liquidation proceedings, it received no more than it otherwise would have received had the payments not been made. The thrust of this defense is that the payments did not diminish the estate and therefore fail to satisfy the requirement of section 547(b)(5). BancOhio maintains that as a secured creditor it could not have been preferred.

However, this assumption is incorrect since BancOhio is only partially secured. Its status as a secured creditor is determined by section 506(a) which provides as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . .

11 U.S.C. § 506(a).

Under section 506(a), BancOhio has a secured claim for only $2,950.00, the value of its collateral, and an unsecured claim of $1,496.25, the balance of the debt, per application and order of abandonment—finding No. 6. In liquidation, BancOhio would have received payment on this unsecured claim only on a pro–rata basis with other unsecured creditors. If the two car payments made on September 19, 1979 and October 15, 1979 were credited to the unsecured balance on the debtor's account, BancOhio received more than it would have received on a pro–rata basis with other unsecured creditors, who have as yet received no dividends at all.

The Court must assume, in the absence of proof to the contrary, that the payments were credited towards the unsecured portion of the debt, since this course of action would comport with standard business prac-

tice. Consequently, one must conclude that BancOhio received greater payment on its unsecured claim than other unsecured creditors and that the transaction satisfies the requirements of section 547(b)(5). The court must therefore sustain the complaint of the trustee to recover the amount of the September 19, 1979 and October 15, 1979 payments.

BancOhio maintains alternatively that it is entitled to a setoff under section 553 of the Bankruptcy Code. A setoff does not occur automatically, however, and BancOhio offered no proof that it had taken the necessary steps to effectuate a setoff. Consequently BancOhio's claim to a setoff also fails.

In *Baker v. National City Bank of Cleveland*, 511 F.2d 1016 (6th Cir. 1975), the Sixth Circuit Court of Appeals held that a setoff must be accompanied by some act of consummation and by clear proof that the party claiming setoff actually exercised the right. A mere declaration of an intent to setoff retrospectively does not establish a setoff.

The Court in *Baker* provided that three steps must be taken to accomplish a setoff. There must first have been a decision to exercise the right to setoff, a subsequent action which completes the setoff, and finally, a record which verifies that the action has been taken, such as a bookkeeping entry or a copy of a telegram to the depositor indicating that a setoff has been made.

Section 4–303 of the Uniform Commercial Code and section 1304.23 of the Ohio Revised Code also deal with the right to setoff. These provisions describe a series of actions after which an instrument drawn against an account is deemed impervious to a setoff, notice, stop order, or other legal process. Comment five following section 1304.23 of the Ohio Revised Code indicates that an item to be charged against a customer account cannot be frozen out by a setoff until "the setoff is actually made." The setoff does not arise automatically merely because the bank and the debtor have mutual debts, but only occurs when there has been a deliberate, overt action

demonstrating that the bank has exercised its right to setoff.

In the matter before this Court BancOhio furnished no proof that such a deliberate, overt action was taken. The debtor paid his monthly installments by checks which were then charged against his checking account. The transactions were entirely ordinary and as a matter of course. No setoff was ever intended or actually made.

BancOhio also maintains that the car payments fall within section 547(c)(2) of the Bankruptcy Code which allows certain transfers made in the ordinary course of business to be excluded from the scope of the trustee's avoiding powers.

Section 547(c)(2) provides that the trustee may not avoid a transfer

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

11 U.S.C. § 547(c)(2)

An otherwise preferential transfer must satisfy all four elements of section 547(c)(2) to qualify for the exception. In the matter before the Court elements (A), (C), and (D) are present, but element (B) is not.

Subsection (B) requires that payment be made within 45 days after the debt was incurred. Since BancOhio must have received the car payments within this required time to qualify for the exception, it is crucial to determine exactly when the 45 day period began and ended. To determine these important dates the Court must interpret the intent of Congress in the use of the phrase "45 days after such debt was incurred."

If Congress intended this phrase to apply to installment loan contracts so that a debt is considered to be "incurred" anew every month when the installment becomes due, the payments to BancOhio could not have been preferences, since the debtor makes each payment within 45 days of its due date. However, if Congress intended the phrase to refer only to the date on which the debtor originally assumes a legal obligation to pay, the payments to BancOhio were indeed preferences, since the 45 days had expired long before the payments were made.

The Court finds that the latter interpretation of section 547(c)(2) correctly reflects the intent of Congress. *Collier on Bankruptcy* supports this view and states that a debt is "incurred" only once and that the 45–day period runs from the time the obligation to pay becomes legally binding. Paragraph 547.38 provides as follows:

> The issue of when a debt is "incurred" is not trivial. One view is that the debt is not incurred until an invoice is sent or demand for payment is made. The better view is that the debt is incurred when even the debtor obtains a property interest in the consideration exchanged giving rise to the debt. 4 *Collier on Bankruptcy*, Section 547.38 (15th ed. 1979).

Mr. Richard B. Levin, a member of the House Judiciary Committee Staff which drafted the Code also concurs in this interpretation of section 547(c)(2)(B). In his article "An Introduction to the Trustee's Avoiding Powers" 53 *Am. Bankr. L.J.* 173 (Spring 1979) Mr. Levin states as follows:

> The second exception to the preference section insulates ordinary trade credit transactions that are kept current. The requirements of the exception are that the incurring of the credit and the payment both be made in the ordinary course of business of the debtor and the creditor, that the transaction be according to ordinary business terms, and that the debtor's payment to the creditor be made not later than 45 days after the debt was incurred.
>
> Forty–five days was selected as a normal trade cycle. For example, a normal trade credit transaction might be as follows: supplier ships goods during month 1 and sends his bill to the debtor at the end of the month or the very early part of the following month. Normally, that bill would become due, or will be payable in the debtor's ordinary course of business, by the 10th of month 2. If it is paid by the 15th, then there will be no question that the entire transaction—incurring of the credit and the payment—took place within 45 days.
>
> Congress has not defined when a debt is incurred. In the preceding example, of course, there is no question. However, if the supplier's bill were paid toward the end of month 2, the supplier/creditor might argue that the debt was not incurred until the invoice was sent, thus bringing the payment within the 45–day period. Congress's intent seems to be to the contrary. For the purpose of this exception, the debt is incurred when it becomes a legally binding obligation on the debtor. Thus, when the goods are shipped, the debtor becomes liable for the payment, and the debt is incurred. This is supported by Congress's selection of the 45–day period: Congress treated as non–preferential an ordinary–course payment of trade credit in the first 15 days of the month following the month in which the goods were shipped or services performed. Payments later than the 15th are often late payments and an indication of financial trouble.

Recent Bankruptcy Court decisions also uphold this interpretation of section 547(c)(2)(B). In the matter of *In re Bowen*, 3 B.R. 617, 6 BCD 254 (Bkrtcy. E.D.Tennessee 1980), monthly installments made by means of payroll deductions were held not to fall within the exception of 547(c)(2). The Court stated that section 547(c) defines a special class of contemporaneous exchanges and does not apply to an installment loan contract under which the debtors initially receive the full consideration and are obligated for the full amount. Installment payments made within the ninety–day preference period and more than 200 days

after the contract was signed were found to be avoidable preferences.

In the matter of *In re Gulf States Marine Inc.*, 6 BCD 79 (W.D. Louisiana 1980), the court similarly held that a debtor who had incurred obligations on open account and had paid within the preference period had made a preferential transfer. The court measured the 45 days from the date the last debt was incurred and found that since 127 days had elapsed, the transaction did not qualify for the exception of section 547(c)(2).

In the matter before this Court the payments made on September 19, 1979 and October 15, 1979 likewise fail to qualify for the exception of 547(c)(2). The original debt was incurred in 1978 when the debtor took possession of the vehicle and assumed the legal obligation to pay on the loan contract. The 45 days began to run at that time and had long since elapsed when the debtor made the payments at issue here.

In the case of *In the Matter of Peter L. Duffy*, 3 B.R. 263, 6 B.C.D. 88 (Bkrtcy, S.D.N.Y.1980) the court aptly stated the policy considerations which underline the matter presently before this Court. While the *Duffy* opinion deals with the meaning of "new value" under sections 547(a)(2) and 547(c)(1) rather than with the phrase "after the debt was incurred" with which we are herein concerned, the *Duffy* rationale applies nonetheless to the similar facts in the instant matter.

The court in *Duffy* found a $400.00 check to a car rental agency cashed within ninety days of bankruptcy to be an avoidable transfer and rejected the creditor's argument that a forbearance to act upon the right to reclaim the leased vehicle insulates the payment from avoidance as a preference. The court stated as follows:

> The basic concept underlying bankruptcy legislation, and of particular significance in dealing with preference is the fundamental goal of equality of distribution see House Report No. 595, 95th Cong. 1st Sess. 177, 178 (1977) . . . In the instant case a forebearance by Avis from repossessing the rented vehicle does not

enhance the value of the estate. The debtor's continued right to drive the rented vehicle is not an asset of benefit to creditors that could reasonably offset the diminution of the estate.

The consequences of the transfer in *Duffy* parallel those in the matter before the Court. BancOhio received preferences in the amount of $438.32 (the amount of the September 19, 1979 and October 15, 1979 payments), yet gave no new consideration, performed no service which could conceivably augment the estate for the benefit of all creditors. No policy considerations justify extending the exceptions of section 547(c) to insulate the type of transactions at issue here. The court must therefore allow the complaint of the trustee to recover the amount of the September 19, 1979 and October 15, 1979 payments as avoidable preferences.