**In the Matter of IOWA PREMIUM SERVICE CO., INC., Debtor.**

**IOWA PREMIUM SERVICE CO., INC., Plaintiff,**

**v.**

**FIRST NATIONAL BANK OF ST. LOUIS, St. Louis, Missouri, Defendant.**

Bankruptcy No. 80–1210–C.
Adv. No. 80–0249.

United States Bankruptcy Court,
S. D. Iowa.

July 20, 1981.

Thomas L. Flynn, Des Moines, Iowa, for debtor.

F. L. Burnette, II, Des Moines, Iowa, for defendant.

## MEMORANDUM OF DECISION

RICHARD STAGEMAN, Bankruptcy Judge.

At Des Moines, in the Southern District of Iowa, on the 20th day of July, 1981.

On the 10th day of November, 1981, Iowa Premium Service Co., Inc., plaintiff, filed a complaint to avoid a preferential transfer pursuant to 11 U.S.C. § 547. The First National Bank of St. Louis, defendant, filed its answer on December 15, 1980. On the 9th day of January, 1981, the parties submitted a stipulation of facts for the court to rule upon without offering further evidence.

On the 13th day of November, 1979, the defendant loaned the plaintiff $400,000 by promissory note with interest payable at the rate of 1¼ percent over prime per annum to date of maturity. The note provided that interest would be paid monthly. Monthly interest payments were made on May 18, June 12, and July 15, 1980. The payments represented the number of days of interest due in accordance with the terms of the promissory note.

The plaintiff filed a voluntary petition in bankruptcy on July 31, 1980.

Section 547(b) [1] provides.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

 (1) to or for the benefit of a creditor;

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

 (3) made while the debtor was insolvent;

 (4) made—

 (A) on or within 90 days before the date of the filing of the petition; or

---

1. The avoidance powers of a trustee also belong to a debtor-in-possession.

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The parties are in agreement that the elements of a preferential transfer pursuant to Section 547(b) are present. However, the defendant asserts that an exception set out in Section 547(c)(2) should be applied here. The exception is:

(c) The trustee may not avoid under this section a transfer—

. . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

The stipulation submitted by the parties establishes that the debt to the First National Bank of St. Louis was incurred in the ordinary course of business; that the transfer by way of interest payments was made in the ordinary course of business and according to ordinary business terms. The only issue then is whether the transfer was "made not later than 45 days after" the debt was incurred. More precisely, was the debt for interest incurred on November 13, 1979, or monthly as each payment came due.

 The purpose of the preference prohibition in bankruptcy is twofold. First, it is to discourage unusual action by either the debtor or creditors as the debtor approaches bankruptcy. Second, it provides equality of distribution. 4 Collier on Bankruptcy, ¶ 547.01, p. 547–7 (15th ed.), *citing* Analysis of H.R.8200, H.R.Rep.No.595, 95th Cong. 1st Sess. 177–78 (1977). Equality of distribution reflects one of the basic aspects of the philosophy of bankruptcy law. *Sampsell v. Imperial Paper and Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941).

 The purpose of Section 547(c) is to insulate normal credit transactions that are kept current.[2] See H.R.Rep.No.95–595, 95th Cong., 1st Sess., p. 373, U.S.Code Cong. & Admin.News 1978, p. 5787. See also Levin, *An Introduction to the Trustee's Avoiding Powers*, 53 The American Bankruptcy L.J. 173, 186 (1979). The Code does not define when a debt is "incurred." Case law holds that "incurred," as used in this section, refers only to the date on which the debtor originally assumes a legal obligation to pay. *In re McCormick*, 5 B.R. 726, 731 (Bkrtcy.N.D.Ohio 1980). A debt is incurred only once, when a debtor assumes an obligation to pay. The debt is not "incurred" anew every month when a payment is due. *Supra.* See also *In re Bowen*, 3 B.R. 617 (Bkrtcy.E.D.Tenn.1980) (installment payments on loan constituted preferential transfer).

 This view is entirely consistent with the definition of "debt" and "claim" in the Bankruptcy Code. A "debt" is a liability on a "claim." Section 101(11). A "claim" as defined includes contingent, unmatured and

---

**2.** There was no express exception under the Bankruptcy Act. However, the courts did develop a "current expense" rule that allowed regular business expenses paid by the debtor under the theory that it was in the interest of the estate to allow the debtor to continue in business. Expenses generally allowed included wages, rent and general operating expenses. See Kaye, *Preferences Under the New Bankruptcy Code*, 54 The American Bankruptcy L.J. 197, 202–04 (1980).

disputed rights to payment. Section 101(4). The debt in this case was "incurred" on November 13, 1979. It is not important that the interest payments were unmatured and contingent.

It should be noted that Section 547(a)(4) sets out a special rule for tax payments. A debt for a tax is "incurred" on the day when the tax is last payable. If in Section 547(c)(2) a debt is "incurred" when it is due[3] and payable, it would appear that there would be no need for a special formula on tax debts. See Kaye, *Preferences Under the New Bankruptcy Code*, 54 The American Bankruptcy L.J. 173, 203, n. 10 (1980).

The transfers (interest payments) were made more than 45 days after the debt was incurred and are voidable preferences under Section 547. An appropriate order will be entered.

---

**3.** "If the due date were the critical date, those creditors who billed irregularly, and at their discretion, could merely make sure [the] debtor was willing and able to pay (at least 45 days) before billing him, i. e., before making the debt 'due.' Gas, phone and credit card creditors, the intended archetypal creditors to benefit from this exception, would not have this billing flexibility." See *Kaye, supra* at note 2.