**In re Harold Raymond SATTERLA, Debtor.**

**Edward B. SPENCE, Trustee, Plaintiff,**

**v.**

**LANSING AUTOMAKERS FEDERAL CREDIT UNION, Defendant.**

**Bankruptcy No. NL 80–01229.**
**Adv. No. 80–0491.**

United States Bankruptcy Court,
W. D. Michigan.

Nov. 4, 1981.

Edward B. Spence, in pro. per.

Farhat, Burns & Story, P. C., Charles E. Henderson, Lansing, Mich., for defendant.

### PREFERENTIAL TRANSFER—SET OFF—SECURED CREDITORS

DAVID E. NIMS, Jr., Bankruptcy Judge.

Trustee seeks to recover a claimed preferential transfer of $423.00 to Lansing Automakers Federal Credit Union (Credit Union). The facts were stipulated. Only the Credit Union filed a brief.

Prior to the 90 day period preceding the filing of his petition, debtor arranged for a payroll deduction whereby $50.00 a week was paid into his account with Credit Union. He authorized Credit Union to deduct $141.00 each month to be applied against his loan balance. Pursuant to this agreement Credit Union deducted $423.00 from Debtor's account during the 90 day period. Debtor was insolvent during this entire period.

11 U.S.C. Section 547(b) provides:

"Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) Between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debtor to the extent provided by the provisions of this title."

In its brief, Credit Union concedes that the above transfers were (1) to or for its benefit, (2) for an antecedent debt owed by debtor before the transfers were made, (3) made while debtor was insolvent and (4) made within the 90 days prior to the filing of the petition. Furthermore, Credit Union does not deny that the application of the money in the debtor's account to the loan balance was a transfer under the Bankruptcy Code. 11 U.S.C. Section 101(40).

■ Credit Union first claims that it was a secured creditor, and, therefore, there was no diminution of the estate by the transfer. In the agreed statement of facts there is no claim that the debt is secured, that the security, if any, was of value, or that there was perfection as against the trustee. Also, said statement does not indicate the amount of the total debt. The debtor's schedules indicate that the value of the alleged collateral, a 1974 Pontiac LeMans, two door automobile, is $200.00. The debt is scheduled at $3500.00. Under similar facts in *In re McCormick*, 5 B.R. 726, 6 B.C.D. 889 (Bkrtcy., N.D.Ohio 1980), the Court stated that a payment to a secured creditor does diminish the estate when the debt is only partially secured.

"Under Section 506(a), BancOhio has a secured claim for only $2,950.00, the value of its collateral, and an unsecured claim of $1,496.25, the balance of the debt, per application and order of abandonment—finding No. 6. In liquidation, BancOhio would have received payment on this unsecured claim only on a pro rata basis with other unsecured creditors. If the two car payments made on September 19, 1979 and October 15, 1979 were credited to the unsecured balance on the debtor's account, BancOhio received more than it would have received on a pro rata basis with other unsecured creditors, who have as yet received no dividends at all.

The Court must assume, in the absence of proof to the contrary, that the payments were credited towards the unsecured portion of the debt, since this course of action would comport with standard business practice. Consequently, one must conclude that BancOhio received greater payment on its unsecured claim than other unsecured creditors and that the transaction satisfies the requirements of Section 547(b)(5). The Court must therefore sustain the complaint of the trustee to recover the amount of the September 19, 1979 and October 15, 1979 payments."

168

The only facts available to the Court would indicate that Credit Union was a secured creditor only in the amount of $200.00 and an unsecured creditor in the sum of $3300.00. Therefore, Credit Union cannot limit the power of the trustee to avoid a possible preferential transfer by reason of its being a secured creditor.

■ Next, Credit Union relies on 11 U.S.C. Section 547(c) which provides in part:

"The trustee may not avoid under this section a transfer—

" * * *

"(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;"

It is the contention of Credit Union that the 45 day period commences on the date that a payment on an installment loan is due. I cannot agree. As was pointed out in *In re McCormick, supra,* "no policy considerations justify extending the exceptions of section 547(c) to insulate the type of transactions at issue here." The Court in *McCormick* held that the 45 day period runs from the date the obligation to pay becomes legally binding. 5 B.R. 726, 6 B.C.D. at 892, citing *In re Bowen,* 3 B.R. 617, 6 B.C.D. 254 (Bkrtcy., E.D.Tenn.1980); *In re Gulf States Marine, Inc.,* 6 B.C.D. 79 (Bkrtcy., W.D.La.1980); *In re Duffy,* 3 B.R. 263, 6 B.C.D. 88 (Bkrtcy., S.D.N.Y.1980).

■ Finally, Credit Union relies on its right to set off. It was established in the early case of *New York County National Bank v. Massey,* 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380 (1904), that a set off does not amount to a preference.

"It is true, as we have seen, that in a sense the bank is permitted to obtain a greater percentage of its claim against the bankrupt than other creditors of the same class, but this indirect result is not brought about by the transfer of property within the meaning of the law. There is nothing in the findings to show fraud or collusion between the bankrupt and the bank with a view to create a preferential transfer of the bankrupt's property to the bank, and in the absence of such showing we cannot regard the deposit as having other effect than to create a debt to the bankrupt, and not a diminution of his estate."

Nevertheless, subsequent cases have held that within the period for preferential transfers, deposits received by a bank with the intention of applying them as payments on a loan could be avoided as preferences. In *Goldstein v. Franklin Square National Bank,* 2 Cir., 107 F.2d 393 (1939) the Court stated:

"Deposits accepted by a bank with intent to apply them on a pre-existing claim against the depositor rather than to hold them subject to the depositor's checks in ordinary course are given their intended effect when so applied, that is to say, they are payments on account of the debt; and if they were made when the depositor was insolvent and within four months of bankruptcy, with knowledge or reasonable cause to believe on the bank's part that the depositor was insolvent, they are recoverable by a trustee in bankruptcy as voidable preferences. *Elliotte v. American Savings Bank & Trust Co.,* 6 Cir., 18 F.2d 460; *Kane v. First Nat. Bank,* 5 Cir., 56 F.2d 534, 85 A.L.R. 362; *Plymouth County Trust Co. v. McDonald,* 1 Cir., 60 F.2d 94. See also *Citizens' Nat. Bank v. Lineberger,* 4 Cir., 45 F.2d 522; *Matters v. Manufacturers' Trust Co.,* 2 Cir., 54 F.2d 1010; *Stevens v. Bank of Manhattan Trust Co.,* 2 Cir., 66 F.2d 502."

The 1978 Act took a different approach to set off as a preference. The focus under 11 U.S.C. Section 553(b) is on the creditor's improvement of position during the 90 day period:

"(1) Except with respect to a setoff of a kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount of offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, 'insufficiency' means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim."

In this case, the stipulation of facts does not furnish the Court with the figures from which the improvement of position, if any, can be determined. The figures required are the amount of the debt and the balance in debtor's account on the following dates:

(1) January 31, 1980 (Date 90 days before filing of petition)

(2) Date of each application of funds to debtor's loan balance during the 90 day period.

(3) First date during the 90 days preceding the date of filing of the petition on which there was an insufficiency, if this date was not January 31, 1980.

The parties will be granted fifteen days in which to file an agreed statement as to the figures on the dates above set forth. If such a statement is not then filed, this case will be set for trial.