ROSS, Circuit Judge,
dissenting, with whom HEANEY and McMILLIAN, Circuit Judges, join.
It is my opinion that the interest payments were made more than 45 days after the debt was incurred, and I therefore dis *1113 sent. I do not share in the majority’s certainty that there can be no doubt as to when IPSCO became legally bound to make the interest payments. The parties agree that the sole issue on appeal is whether the transfer was made not later than 45 days after the debt was incurred as is required by section 547(c)(2)(B). More simply, whether the debt for interest was incurred on November 13, 1979, when the note was executed, or monthly as each payment came due. I believe that the debt was incurred on November 13, 1979; thus, the interest payments were preferential transfers not insulated by the section 547(c)(2) exception.
Congress has not defined when a debt is incurred. However, case law holds that a debt is “incurred” on the date upon which the debtor first becomes legally bound to pay. See Barash v. Public Finance Corp., 658 F.2d 504 (7th Cir.1981); In re McCormick, 5 B.R. 726 (Bkrtcy.N.D.Ohio 1980); In re Bowen, 3 B.R. 617 (Bkrtcy.E.D.Tenn.1980). I submit that Congress intended the phrase here involved to relate only to the date the debtor originally undertook the obligation to pay the debt in question; that is, the date the promissory note was signed. This is supported by Congress’ selection of the 45-day time period; Congress treated as nonpreferential an ordinary-course payment of trade credit in the first 15 days of the month following the month in which the legal obligation to pay arose.
Section 547(c)(2) was not intended to cover the kind of transaction before this court. IPSCO had received the full consideration and was obligated to the Bank for the full amount for much more than 45 days before the interest payments were made. The section 547(c)(2) exception extends only to situations where payment is made within 45 days after the debtor first becomes legally bound to pay. Barash v. Public Finance Corp., supra, 658 F.2d at 512. I conclude that the interest payments were made more than 45 days after the debt was incurred and are avoidable preferences under section 547.
I disagree with the majority’s explanation of the contingent nature of the interest payments made by IPSCO. At 1111. It is my view that a fixed obligation arose on November 13, 1979, by virtue of the execution of the promissory note. The majority states that the payments are of a contingent nature and the amount of interest was not reduced to a sum certain on the date of execution. I disagree. The amount of interest could easily be reduced to a concrete amount by using the interest formula set out in the note itself; the only contingent feature was the clause which made the note subject to prepayment at IPSCO’s desire. The majority’s focus on the prepayment clause as reducing the interest obligation to that of a contingent obligation would allow all installment loan debtors to use this same reasoning. If an installment loan can be prepaid at any time, then the monthly payments are also not reduced to a sum certain and, therefore, section 547(c)(2) would also apply in that situation. The majority also relies on the fact that the bank would not have a cause of action for nonpayment of interest until the end of the month in which IPSCO retained use of the principal. Similarly, a bank would not have a cause of action for nonpayment of an installment loan until the end of the month in which the debtor retained use of the principal. That is why the court in Barash v. Public Finance Corp., supra, chose not to differentiate between the interest and the principal amounts in considering when a debt is incurred in an installment loan situation.
The majority’s comparison of IPSCO’s payment of interest with a tenant’s payment of rent, at 1111, is contrary to the most recent pronouncement of the law. Carmack v. Zell, 17 B.R. 177 (Bkrtcy.S.D. Ohio 1982). In Carmack, the court declined
to follow the rationale advanced by the trustee that the debt was incurred at the time of the original signing of the lease obligations. The total lease obligation, at that point in time, was not due and payable — it was only due and payable as the lease term progressed and as the lessee occupied the premises subject to the leasehold in accordance with the terms of the lease. Contrary to the suggestion of *1114 the trustee, this situation is not analogous to payments on a long-term unsecured note obligation. An unexpired lease on real estate is treated as an executory contract under the Bankruptcy Code (11 U.S.C. § 365), a recognition of the principle that such lease involves an exchange of rights and obligations by the parties to the lease throughout its term. The concept of adequate assurance of future performance under a lease is separately provided for in the Bankruptcy Code because unlike the payee on a long-term note obligation who merely accepts periodic payments from a payor, a lessor (or lessee in rarer circumstances) continues to supply to a lessee performance under the lease and, as rent is paid, continues to provide to the lessee the benefit of an on-going leasehold estate.
Id. at 179. I agree that interest payments on an unsecured note are not analogous to rent payments. In the instant case, the bank had fully performed all of its obligations on the date of the note’s execution while IPSCO was still required to perform by continuing to make periodic payments.
I also do not agree that this situation is analogous to that of a consumer of an electric utility; nor is it similar to that of a debtor in a credit card arrangement. The majority states:
IPSCO can also be compared to a customer of an electric utility. The customer agrees to pay for whatever electricity it uses, but the debt to the utility is not incurred until the resource is consumed. A customer does not incur a debt when it makes the original agreement with the utility. Likewise, IPSCO agreed to pay interest for the use it made of the money, but the debt was not incurred until IP-SCO actually used the money.
At 1111-1112. I agree that the debt is not incurred until the resource is consumed; however, IPSCO consumed the resource when it borrowed the money in November of 1979. IPSCO does not consume a new resource each month as does the electric utility consumer. Furthermore, IPSCO’s position is not comparable to that of a credit card user. The court in In re Brown, 20 B.R. 554 (Bkrtcy.S.D.New York 1982), held that credit card debts were incurred on the date when the debtor obtained a property interest in the consideration exchanged for the debt rather than when the invoice or statement was due. However, the court further held that the policy behind section 547(c)(2) was applicable to credit card agreements because:
Short term credit, which normally involves relatively small amounts, was originally intended to be protected when the Commission on the Bankruptcy Law proposed that payments made within five days of the filing of the petition and payments in small amounts should be excepted from avoidance as preferences. Commission Report, Part II, pp. 166-67, § 4-607(b)(g)(l). Although the Commission’s proposal was not adopted in its original form, the 45-day limitation period continued the concept of protection for short term payments, which are usually relatively small in amount.
Id. at 555-556. Thus, if the Commission desired only to protect short term payments in small amounts, credit card purchases could be excepted while large interest payments on a long term note would not be so excepted.
I also take issue with the majority’s position that the only case which addresses the question involved in this case is In Re Ken Gardner Ford Sales, Inc., 10 B.R. 632 (Bkrtcy.E.D.Tenn.1981). Ken Gardner is one bankruptcy judge’s interpretation of section 547(c)(2). A contrary interpretation was reached by the bankruptcy judges in: In Re Goodman Industries, Inc., 21 B.R. 512 (Bkrtcy.Mass.1982); Iowa Premium Service Co. v. First Nat’l Bank of St. Louis, 12 B.R. 597 (Bkrtcy.S.D.Iowa 1981); In Re McCormick, 5 B.R. 726 (Bkrtcy.N.D.Ohio 1980); and In Re Bowen, 3 B.R. 617 (Bkrtcy.E.D.Tenn.1980). The majority asserts that McCormick and Bowen are distinguishable because they involve mixed payments of principal and interest. For the reasons we stated earlier, we deem that assertion to be a distinction without a difference. Further, the court in the Goodman case dealt only *1115 with the status of interest payments and held that section 547(c)(2) does not insulate such interest payments and therefore they are preferences which can be avoided by the trustee. Moreover, in Barash, the Seventh Circuit held that a debt is incurred when the debtor first becomes legally bound to pay. I feel compelled to afford more deference to the Seventh Circuit’s opinion than to a single bankruptcy judge’s opinion.
I also disagree with the majority’s policy argument that if IPSCO’s interpretation were adopted, banks would be in a disadvantaged position compared with trade creditors who deal in the sale of tangible goods. I feel that my interpretation would put banks and trade creditors in exactly the same position: a trade creditor sells his product in one month and the billing for the entire cost of the product occurs near the beginning of the following month; however, a bank sells its product (the loan of money) in one month, and it is billed out (in interest payments) over a span of many months. Thus, if a bank would bill out in the same manner as a trade creditor, it would receive the same insulation as an ordinary trade credit transaction.
For the foregoing reasons, I would affirm the decision of the bankruptcy court.