In re AUTO–TRAIN CORPORATION, A Florida Corporation, also known as Railway Services Corporation, Debtor.

A.I. CREDIT CORPORATION, Appellant,

v.

Murray DRABKIN, Trustee of Auto-Train Corporation, also known as Railway Services Corporation, Appellee.

Civ. A. Nos. 84–293, 84–296.
Bankruptcy No. 80–00391.
Adv. Nos. 82–0305, 82–0367.

United States District Court,
District of Columbia.

April 30, 1985.

Barry Dichter, Cadwalader, Wickersham & Taft, Washington, D.C., for trustee.

Calvin Cobb, Bryan Veis, Steptoe & Johnson, Washington, D.C., for A.I. Credit Corp.; Michael Davis, New York City of counsel.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

The creditor A.I. Credit Corporation ("A.I. Credit" or "AICCO") appeals from two identical adversary proceedings in the United States Bankruptcy Court for the District of Columbia. Bankruptcy Case No. 80–391; Adversary Proceeding Nos. 82–305 and 82–367. After a hearing on November 15, 1983, the bankruptcy judge granted summary judgment in favor of Murray Drabkin, the duly qualified trustee of the debtor, Auto-Train Corporation ("Auto-Train"), also known as Railway Services Corporation, and against A.I. Credit. He issued findings of fact and conclusions of law from the bench, which were later incorporated in a written opinion, issued December 6, 1983. A.I. Credit was directed to return $155,000 in payments it had received from the debtor during the 90-day period prior to the filing of its petition for relief under the Bankruptcy Code, in addition to prejudgment interest, for a sum total of approximately $190,000. After a thorough review of the record, the briefs of the parties and the oral argument of counsel, the Court affirms the rulings of the Bankruptcy Court in all respects. The reasons for that determination are set forth below.

## BACKGROUND

Auto-Train filed a petition under Chapter 11 of the Bankruptcy Code on September 8, 1980. Approximately four months earlier, Auto-Train had negotiated an agreement with AICCO whereby AICCO financed certain insurance premiums on property and casualty insurance policies. In return for AICCO's payment of $1.3 million in prepaid insurance premiums to Auto-Train's broker, Auto-Train agreed to make a contemporaneous down payment on the loan and two monthly installment payments, in addition to future monthly installments. The collateral for this loan consisted of "any and all unearned return premiums and dividends which may become payable under the policies...." Appendix at 298.[1]

If Auto-Train defaulted on any installment payments, AICCO could recover the value of its security by cancelling the policies, and collecting the unearned return premiums. The nature of this collateral was somewhat unusual in that its value diminished at a constant rate as Auto-Train received insurance coverage. Thus, the value of AICCO's secured claim decreased over time, while the value of its unsecured claim concomitantly increased.

This phenomenon is demonstrated by the undisputed facts in this case. On June 13, 1980, the date of the loan transaction, the value of the unearned return premiums exceeded $1 million. On September 8, 1980, the date Auto-Train declared bankruptcy, the value of AICCO's security interest had diminished to $762,000, and its remaining claim of $486,000 was unsecured.

Between these two dates, the debtor and creditor entered into an arrangement which is the predicate for this litigation. When the check Auto-Train issued for the down payment and the first two monthly installments was dishonored for insufficient funds, AICCO agreed to a new payment schedule whereby Auto-Train would tender weekly payments to AICCO in the amount of $25,000. During the 90 days prior to bankruptcy, Auto-Train made sporadic payments to AICCO under this arrangement totaling $155,000. The parties disagree as to whether these payments represented payments on the secured or unsecured portion of the debt.

This action arises from the trustee's recovery of these pre-petition payments as preferential transfers under 11 U.S.C. § 547(b). In an earlier action instituted by the trustee, he challenged the validity of AICCO's security interest in the unearned premiums and sought to enjoin the cancellation of the policies. That action was instituted on November 26, 1980, approximately two and one-half months after he was appointed trustee. The Bankruptcy Court granted summary judgment in AICCO's favor. *In Re Auto-Train Corp.*, 9 B.R. 159 (Bankr.D.D.C.1981) ("AICCO I"). AICCO recovered the full value of its secured claim, measured as of the date of the filing of the petition. AICCO will receive no reimbursement for the unsecured portion of its claim because no dividends will be paid to unsecured creditors. Thus, the proper characterization of the $155,000 in payments is crucial to the outcome of this case.

## ISSUES PRESENTED

In a 23-page memorandum decision, the Bankruptcy Court determined that the trustee had established all of the requisite elements of a voidable preferential transfer under 11 U.S.C. § 547(b).[2] The Court also determined that the transfers were not protected from preference attack by any of the statutory exceptions to recovery. § 547(c). These rulings form the basis for the present appeal.

The first issue is whether the Bankruptcy Court correctly determined that the payments were preferential transfers. The appellants argue that the payments are not

---

1. The Appendix was filed by AICCO on February 24, 1984, and is hereinafter cited as "App. at ——."

2. The Bankruptcy Court's opinion is filed as an addendum to the trustee's brief, and is cited as Opinion at ——.

preferences because they were applied to the secured portion of the debt and AICCO returned something of value to the estate by refraining from canceling the insurance policies.

The second issue is whether the Bankruptcy Court correctly determined that these payments did not fall into one of several exceptions to the preference provisions of § 547(b): payments in exchange for contemporaneous or subsequent new value, or transfers in the nature of fluctuating collateral which did not enable the creditor to improve its position during the 90-day period before bankruptcy. The third issue is whether principles of *res judicata* bar this action.

## LEGAL ANALYSIS

### 1.

### Preferential transfer: § 547(b)

■ The preferential transfer provision of the Code, 11 U.S.C. § 547(b), includes five elements. The complete text of 11 U.S.C. § 547(b) reads as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

\* \* \* \* \* \*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The trustee must establish all five elements in order to avoid a transfer. *Barash v. Public Finance Corp.*, 658 F.2d 504, 507 (7th Cir.1981).

■ The appellants assert that the trustee has not established the fifth element, which requires the trustee to show that the creditor received more money than he would have received if the payments had not been made and he received reimbursement after liquidation. *See id.* at 508. The purpose of this provision is to discourage creditors within a short period before bankruptcy "from racing to the courthouse to dismember the debtor during his slide into bankruptcy" and to ensure that creditors are treated equally. H.R.Rep. No. 595 ("House Report"), 95th Cong., 1st Sess. 177, *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, at 5963, 6138. To the extent a creditor obtains more than a pro rata share of his outstanding claim, he has been preferred over other creditors in his class.

■ The first step in determining whether a creditor has received a preferential transfer requires a determination of the secured status of the creditor at the time bankruptcy is declared, *see, e.g., Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936); *Barash*, 658 F.2d at 506–09, and the amount of any payments he has received during the 90-day period. This analysis requires the Bankruptcy Court to determine whether the value of a creditor's secured interest at the date of bankruptcy, coupled with the transfers, enabled the creditor to obtain more funds than if no transfer had occurred. *Barash*, 658 F.2d at 507. A creditor may retain any payments received during the 90-day period if those payments do not give him a bigger payoff than he would have received if he had waited until bankruptcy to obtain payment. In short, the Court conducts two separate liquidation analyses: a real liquidation in which the Court looks at the value of the secured claim on the date of bankruptcy, plus the transfer, and a hypothetical liquidation, in which the Court determines the value of the secured claim if the

transfers had not occurred. *In Re Zachman Homes, Inc.*, 40 B.R. 171, 172 (Bankr. D.Minn.1984). In both cases, the secured claim is valued as of the date of bankruptcy. *See id.* at 173; *In Re Conn*, 9 B.R. 431, 434 (Bankr.N.D.Ohio 1981).

The Court properly followed this analysis, constructed a hypothetical liquidation of the debtor's estate, and measured the value of AICCO's secured claim as of the date of bankruptcy. The Bankruptcy Court correctly recognized that the relevant inquiry is whether

the payments enable a creditor to receive more than it would receive in a liquidation if the payments had not been made....

Opinion at 6. If so, the elements of a preference have been satisfied.

It is undisputed that as of the date of bankruptcy, AICCO had a secured claim of $762,000 and an unsecured claim of $486,-000. In the absence of any payments during the 90-day period, AICCO would have received $762,000, the amount of its secured claim. In this hypothetical liquidation, however, AICCO would not have received any additional payments on the $486,000 unsecured claim because no dividends were paid on such claims. Thus, AICCO was entitled to receive no more than $762,000, the value of its secured claim on the date of bankruptcy.

Next, the Court compared this amount with the amount AICCO actually received by virtue of the transfers during the 90-day period. It is undisputed that the transfers gave AICCO both the value of its collateral on the date of bankruptcy ($762,000), plus the amount of the payments ($155,000). Thus, AICCO received more than it would have received if the payments had not been made. These payments gave AICCO an advantage over other creditors, contrary to the history and purpose of the Bankruptcy Code.

AICCO tries to avoid this result by relying on cases which suggest that a creditor may retain any payments received from the debtor during the 90-day period if the creditor in turn releases an equal value of its secured interest to the debtor. *See, e.g., In Re Zuni*, 6 B.R. 449, 452 (Bankr.D.N.M. 1980). An example will serve as an illustration. Suppose a creditor holds a $10,000 loan, secured by two automobiles, each worth $4,000 on the date of bankruptcy. If the creditor receives a $4,000 payment from the debtor during the 90-day period, and returns one automobile, and the debtor later becomes bankrupt, the creditor may still realize the value of the remaining automobile, worth $4,000. He has received a total of $8,000 from the debtor. In the absence of any payments, he would not have returned the first car to the debtor, and would have realized the full value of his then outstanding security interest—$8,000. Thus, the payments put him in precisely the same situation as he would have been in had the payments not been made, and he need not return them to the trustee.

The courts often simplify this analysis by looking at whether a creditor receives payment on an unsecured or a secured claim. *See Barash*, 658 F.2d at 507; *In Re Zuni*, 6 B.R. at 452. A creditor who receives payment on an unsecured claim has always been preferred because he does not release any collateral to the debtor. He has obtained an unfair advantage at the expense of other creditors because he has "receive[d] a greater proportion of [his] unsecured claims than other unsecured claimants" who received payment after liquidation. *Barash*, 658 F.2d at 508. *See also In Re McCormick*, 5 B.R. 726, 729 (Bankr.N.D.Ohio 1980).

On the other hand, a creditor who receives payment on a secured claim has not been preferred because he has merely realized the value of his collateral earlier than he would have if he had waited until liquidation. These payments do not deplete the debtor's estate, and thereby deprive other creditors of their fair share of payment. *In Re Hawkins Mfg. Inc.*, 11 B.R. 512, 513–14 (Bankr.D.Colo.1981).

The above analysis demonstrates that the determination of whether a creditor has

been preferred is often rather straight-forward: creditors who receive payments on unsecured claims have been preferred, while those who receive payment on secured claims have generally not. Given this dichotomy, it is hardly surprising that the parties have placed themselves in diametrically opposed camps: AICCO argues that the installments were received for the secured portion of its claim, while the trustee contends that the debtor tendered the installments for the unsecured portion of its debt. The Bankruptcy Judge joined in the fray and sided with the trustee, holding that "AICCO has introduced no competent evidence to rebut the presumption [*by showing*] that it actually credited the debtor's payments to secured debt." Opinion at 8. This presumption arises because sensible business persons would ordinarily credit payments to the unsecured portion of a debt in order to retain collateral, which provides additional protection for the amount of the debt. *See, e.g., In Re McCormick*, 5 B.R. at 729–30.

■ In this case, the validity of the Bankruptcy Court's holding does not depend on the nature of the transfers or the legal presumption that payments are normally credited toward the unsecured portion of a debt. This is because AICCO was entitled to no more than the value of its secured claim on the date of bankruptcy, in addition to any payments which did not enable it to improve its position vis-a-vis other creditors.

In the case of collateral—such as unpaid insurance premiums—which rapidly and automatically diminishes during the 90-day period, any payments received by the creditor will enable him to obtain an advantage over other creditors. With or without these payments, the creditor's secured interest will automatically decline by the date of bankruptcy. The payments do not affect the value of the collateral as of the date of bankruptcy, as in the cases cited by appellants. This type of creditor must always return the payments to the trustee because they will enable him to receive more than he would have received if he had waited until liquidation to obtain payment.

AICCO argues that this result is unfair. Whatever the potential merit of this argument, the result is nevertheless mandated by the Code. AICCO assumed the risk that if Auto-Train went bankrupt, AICCO would not recover the higher value of its collateral, measured at the time it first entered into the arrangement with Auto-Train. By the time Auto-Train filed for bankruptcy, AICCO's secured claim had diminished to $762,000. Since AICCO has already realized this value, the additional payments constitute preferential transfers within the meaning of 11 U.S.C. § 547(b).

**2.**

**Affirmative Defenses**

■ Section 547(c) sets forth six affirmative defenses for a preference action. If a creditor establishes any one of these defenses, the payments he receives may not be recouped by the trustee. *Matter of Advance Glove Mfg. Co.*, 42 B.R. 489, 492 (Bankr.E.D.Mich.1984). AICCO asserts that it has met the requirements of three of these affirmative defenses, two of which are very similar. These defenses are discussed in turn.

**Contemporaneous or Subsequent New Value: § 547(c)(1) and (2)**

■ AICCO argues that the payments constituted a contemporaneous exchange for new value under § 547(c)(1), or in the alternative, a noncontemporaneous exchange for new value under § 574(c)(2). These defenses are essentially identical, only the timing of the exchanges varies. In the first case, the debtor and creditor exchange consideration simultaneously, in the second, the creditor gives new value after the payments are received. In both cases, the creditor must show that it gave new value to the debtor. Under the Code,

"new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferree in a transaction that is neither void

nor voidable by the debtor or the trustee under any applicable law, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2). The "new value" defense is grounded in the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of other creditors.

■ AICCO argues that it gave new value to Auto-Train by allowing it to continue to consume prepaid insurance premiums, in return for the periodic payments equaling $155,000. AICCO makes much of the fact that these payments were nearly equal to the current monthly payments due under the original schedule. As such, AICCO asserts that Auto-Train received a current monthly benefit in return for the payments, and did not merely make inroads into its past arrearage. In the view of the Bankruptcy Court, this distinction was irrelevant. The Court stated that AICCO did not give new value to Auto-Train because it "merely collected monies owed to it on a debt that had been incurred by the Debtor in June 1980." Opinion at 11.

The Court agrees with this characterization of the transaction. Even if Auto-Train made these payments to satisfy its current obligations, these current obligations arose from the antecedent debt. The critical point is that regardless of the allocation of these payments, they arose from Auto-Train's existing obligation to make monthly payments on an antecedent debt. The new arrangement was "an obligation substituted for an existing obligation," which is expressly excluded from the definition of new value. *See* Section 547(a)(2).

■ As the Court held in *In Re McCormick*, 5 B.R. at 731, section 547(c)(2) does not protect payments on

> an installment loan contract under which the debtors initially receive the full con-

sideration and are obligated for the full amount.

In discussing installment loan contracts, the *McCormick* Court did not distinguish between payments designed to satisfy current obligations on an antecedent debt and payments for past arrearage. The cases the appellants rely on are inapposite because they did not involve payments on antecedent debt. *See e.g., In re Clothes, Inc.,* 45 B.R. 419, 422 (Bankr.D.N.D.1984); *Matter of Advance Glove Mfg. Co.,* 42 B.R. at 493.[3] Thus, AICCO has not established that it gave new value to the debtor, and its defense under section 547(c)(1) and (2) must fail.

**Transfers of Perfected Security Interests in Inventory or Receivables: § 547(c)(5)**

■ AICCO also argues that the payments are protected because they were similar to transfers of security interest in a receivable which did not allow AICCO to improve its position during the 90-day period prior to bankruptcy. Section 547(c)(5). In making this argument, AICCO misconceives the reach of this section. As the Bankruptcy Court held, this section is intended to apply to a creditor who receives additional collateral by virtue of a perfected security interest in inventory or accounts receivable. Opinion at 13–14. The creditor must satisfy a two-part test. It must show both that it received a transfer of additional collateral during the 90-day period and that it did not improve its position by virtue of the transfer. This section is intended to protect creditors with security interests in "a floating mass" whose composition and value inevitably fluctuates during the 90-day period. *See* House Report at 373; S.Rep. No. 989 ("Senate Report"), 95th Cong., 2d Sess. 88, *reprinted in* U.S.Code Cong. & Ad.News 1978, pp. 5787, 5874; *In Re Lackow Bros., Inc.,* 19 B.R. 601, 604–605 (Bankr.S.D.Fla.1982), *aff'd,* 752 F.2d 1529 (11th Cir.1985).

---

**3.** By way of analogy, this arrangement also resembles an agreement by AICCO to delay liquidating its security interest in the debt. As the Bankruptcy Court correctly held, this type of

forebearance is not new new value within the meaning of the Code. *See e.g., Matter of Duffy,* 3 B.R. 263, 266 (Bankr.S.D.N.Y.1980).

As the Bankruptcy Court correctly noted, AICCO failed the first part of the test because its security interest did not relate to property whose composition varied throughout the 90-day period. AICCO held a security interest in prepaid insurance premiums, both at the beginning and the end of the period. This right was transferred to the AICCO at the same time the loan agreement was executed, and it acquired no additional collateral during the 90-day period. It is immaterial that the value of this collateral varied during this period. Under these circumstances, AICCO did not receive a transfer of a perfected security interest entitling it to protection under the Code, and the Court need not look to whether the payments enabled AICCO to improve its position.

### 3.

### Res Judicata

■ Lastly, AICCO asserts that the trustee's previous litigation concerning the validity of AICCO's security interest in the unearned premiums should preclude the present action. In the prior litigation, the Bankruptcy Court upheld the validity of AICCO's security interest. AICCO argues that the preference issue should also have been raised and decided, and the trustee's failure to do so is fatal to his present cause. The Bankruptcy Court, who also presided over the earlier litigation, rejected AICCO's *res judicata* argument, and held that the two proceedings were not based on the same cause of action. Opinion at 14.

The Bankruptcy Court cited *Turner v. Department of Army*, 447 F.Supp. 1207 (D.D.C.1978), *aff'd mem.*, 593 F.2d 1372 (D.C.Cir.1979) and *Matter of Silver Mill Frozen Foods, Inc.*, 32 B.R. 783 (Bankr.W. D.Mich.1983) in support of its conclusion that *res judicata* does not bar the present action. In reaching this conclusion, the Court noted that the subject matter of the two actions and the nature of the relief sought were dissimilar. In particular, the present action required a "thorough preference" analysis, including a detailed examination of the nature of the transfers, the value and type of collateral, and a compari-

son and evaluation of the claims of competing creditors. Opinion at 16, 19. In contrast, the earlier proceeding involved the relatively straightforward question of the validity of the loan agreement. The trustee was forced to move quickly in order to protect his right to challenge AICCO's security interest, and AICCO responded by counterclaiming for relief from the automatic stay. The Bankruptcy Court was required to hear the matter on an expedited basis—within 30 days after AICCO's request. Under these circumstances, the Bankruptcy Court found that the factual basis for a preference action could not have been established in the earlier proceeding.

Although the Court did not discuss the broader transactional view of a cause of action espoused in The Restatement (Second) of Judgments § 24 (1982), the application of this test provides the same result. The two proceedings do not involve the same transaction or series of connected transactions because they do not "form a convenient trial unit," *see id.* § 24(2), for the reasons stated above. To hold otherwise would mean that the trustee would have to forego his responsibility to resolve the validity of a security interest at the risk of forfeiting a future preference action. This result cannot be intended by the Code, which suggests that preference issues should be determined in "more complete proceedings." Senate Report at 55; House Report at 344. Thus, the present action is not barred by *res judicata*.

### CONCLUSION

The Court determines that the Bankruptcy Court correctly determined that the appellee-trustee is entitled to recover the sum of $189,550.30 under 11 U.S.C. § 547(b), plus postjudgment interest, and that none of the exceptions of 11 U.S.C. § 547(c) are applicable.