In re NUCORP ENERGY, INC., and its Affiliated Debtors, Debtors.

MILCHEM, INC., a Delaware corporation, Appellant,

v.

Milton FREDMAN, Co–Liquidating Trustee of the Nucorp Liquidating Trust, Appellee.

No. 89–55219.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1990.

Decided April 26, 1990.

Ali M. M. Mojdehi, Baker & McKenzie, San Diego, Cal., for appellee.

Sam T. Weinberg, Houston, Tex., for appellant.

Before LEAVY and TROTT, Circuit Judges and GRAY *, District Judge.

GRAY, Senior District Judge:

Milchem, Inc. appeals from a judgment of the United States District Court that adopted and affirmed Bankruptcy Judge Malugen's decision in *In re Nucorp Energy, Inc.*, 80 B.R. 517 (Bankr.S.D.Cal.1987). Such decision granted to Milton Fredman, Trustee in Bankruptcy, recovery of payments made to Milchem by the debtor, on the ground that the payments were avoidable as preferential under section 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b) (1988). We affirm in part, reverse in part and remand.

## FACTS

Nucorp Energy, Inc. (the debtor) was in the business of oil and gas exploration, and was undertaking to drill a well in North Dakota. Milchem furnished labor and materials for this project, the first such contribution having been made on December 12, 1981. The well proved to be a "dry hole",

---

* Honorable William P. Gray, Senior United States District Judge for the Central District of California, sitting by designation.

and it was plugged and abandoned on February 23, 1982.

The debtor paid to Milchem a total of $101,681.57 in three installments in full payment of its claim. These payments were made within ninety days preceding the debtor's filing for bankruptcy under Chapter 11 on July 27, 1982.

Under North Dakota law, any person that furnishes any materials or services used in the drilling of an oil or gas well is entitled to a lien, N.D.Cent.Code § 35–24–02 (1980), that extends to the whole of the leasehold to which the materials or services are furnished. § 35–24–03. The lien arises on the date that the first item of material or services is furnished, § 35–24–08, and in order for it to be enforceable, a statement of lien must be filed within six months following the last contribution. § 35–24–11.

Milchem, understandably, did not file a statement of lien, because the process is somewhat troublesome and expensive, and it expected to be paid in due course before the period for filing expired. When Milchem was paid as expected, such a filing presumably became inappropriate because there remained no obligation against which to claim a lien.

In light of the foregoing facts, the trustee successfully sought to avoid the transfer of the $101,681.57 as a preference, pursuant to section 547(b) of the Bankruptcy Code [1], claiming that the transfer enabled Milchem to obtain more than it would have received if the transfer had not been made and Milchem had recovered only through Chapter 7 proceedings. Payments to the general creditors through the bankruptcy proceedings amounted to about sixteen cents on the dollar.

## I.

Section 547(b) allows the trustee to avoid preferential transfers.[2] Section 547(b), however, is subject to six exceptions set forth in section 547(c). Milchem contends that it gave new value in exchange for the payment of $101,681.57 and that therefore the transfer falls within the exception of section 547(c)(1). Section 547(c)(1) provides:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange[.]

---

1. Section 547(b) provides:
   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; or
   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

2. Milchem contends that the trustee failed to meet a threshold requirement of section 547(b) in that the property transferred was not property of the estate. Apparently, joint venturers deposited money into the debtor's account as partial payment for costs incurred in drilling the well. Milchem maintains that the joint venturers' money was used to pay its claim and thus is not avoidable as property of the estate. The bankruptcy court did not articulate a specific finding as to this issue, however, in order to sustain its judgment that the trustee recover all of the payments, the bankruptcy court necessarily found that the payments made to Milchem were property of the debtor's estate. In light of the fact that the joint venturers' money was deposited in an account over which the debtor had exclusive control, this court affirms that the payments to Milchem were property of the debtor's estate.

In support of its contention that it gave "new value" in exchange for the transfer that it received, Milchem points to the definition contained in section 547(a)(2):

> (2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law....

The trustee and Bankruptcy Judge Malugen have taken the position that Milchem does not fall within the section 547(c)(1) exception, and the resulting dispute has two aspects:

## A. *The Transfer For "New Value"*

The Bankruptcy Judge found that "the well against which Milchem's lien would have attached had been plugged and abandoned as worthless." 80 B.R. at 519. Thus, according to the trustee, the lien, also, had no value.

At the oral argument before us, counsel for Milchem contended that, although the well itself may have been worthless, any statement of lien that might have been filed would have been against the entire leasehold and that the leasehold included valuable equipment and perhaps even producing wells. We have combed the record in an unsuccessful attempt to find any evidence concerning the value and extent of the leasehold upon which the well was dug. It was Milchem's obligation to present evidence to show that the property to which to the lien could have attached had value. No such showing was made.

## B. *Valuation Of Property Received*

■ Milchem's alternative position is that it is inappropriate to try to determine the value of the property received by the debtor in the questioned transfer. Milchem relies upon the precise wording of section 547(a)(2), which, as set out above, defines new value as meaning "money or

money's worth in goods, services, *or* new credit, *or* release by a transferee of property previously transferred to such transferee...." (Emphasis added.)[3] The inference is that because of the insertion of "or" before "new credit," the phrase "money or money's worth" applies to goods, services or new credit, but not to "release by a transferee of property previously transferred to such transferee...." Thus, according to Milchem, the property released by a creditor in the transfer need have no particular value in order to constitute "new value" and that therefore the trustee could not avoid the transfer made by the debtor to the creditor.

Milchem gets some help from *In re George Rodman, Inc.,* 792 F.2d 125, 128 (10th Cir.1986), in which the opinion asserted with respect to section 547(c) and 547(a)(2) that "[t]he plain language of the definition does not require the valuation of the property transferred." The opinion did not state the basis for its conclusion, although we are inclined to infer that the rationale was the same as the one upon which Milchem relies and which is a plausible interpretation, given the placement of "or."

However, in *Rodman,* the challenged payment by the debtor caused the release of a lien on a well that was in the exploration stage and thus was believed to have had substantial value when the transfer was made. Only at the time of the adversary bankruptcy proceedings was the lien determined to be worthless. This distinction was emphasized in a later decision of the Tenth Circuit, *In re Robinson Bros. Drilling, Inc.,* 877 F.2d 32 (10th Cir.1989), which made an "interpretation" of *Rodman* as follows:

> Specifically, we ruled that valuation of the transfer from creditor to debtor, in the case of the release of a valid lien, was *not* required at the time of the adversary hearing under the plain terms of § 547(c)(1). Consequently, that the lien

---

**3.** This court does not need to determine whether a creditor's forbearance of its right to perfect a lien is a release of property constituting an exchange for new value since the lien against

the property was valueless in this case. *See Cimmaron Oil Co., Inc. v. Cameron Consultants, Inc.,* 71 B.R. 1005 (N.D.Tex.1987).

on the well may have had no value at the time of the adversary hearing was of no importance, so long as it had value at the time of the transfer. *See also Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Sys., Inc.),* 861 F.2d 1555, 1559 n. 5 (11th Cir.1988).

Although not explicitly stated in the opinion, it is elementary that the creditor in *In re George Rodman, Inc.* was entitled to the § 547(c)(1) defense because it released a lien equivalent to the full amount of the transfer by the debtor. Thus, the estate was not diminished by the transfer because the creditor was secured by a valid lien to the full extent of transfer by the debtor, and the goals of the § 547(c)(1) defense were met. *Id.* at 33–34.

In light of the foregoing, it is clear that, irrespective of the presence of the word "or" in the statute, the Tenth Circuit would not have allowed a section 547(c)(1) defense when, as here, the release of the right to a lien was of no value at the time of the transfer; nor do we.

Examination of section 547 shows clearly that its purpose was to accomplish proportionate distribution of the debtor's assets among its creditors, and therefore to prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all. In order to carry out this purpose "[a] court must measure the value given to the creditor and the new value given to the debtor in determining the extent to which the trustee may void a contemporaneous exchange." *In re Jet Florida Systems, Inc.,* 861 F.2d 1555, 1558–59 (11th Cir. 1988). Here, the sum of $101,681.57 was transferred to the creditor, and the resulting release of the right to file a lien provided no new value whatever. Therefore, the

payment was a preference and did not come within the exception of section 547(c)(1).[4]

## II.

■ Milchem also asserts that the transfers are excepted from avoidance under section 547(c)(6), which provides that a trustee may not avoid a transfer "that is the fixing of the statutory lien that is not avoidable under section 545 of this title." Section 545(2) provides:

[The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—]

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists[.]

There is no dispute that Milchem's lien is a statutory lien. Section 545(2) mandates perfection of such a lien.[5] To perfect a lien in North Dakota, the creditor must file a notice of lien within six months after the date on which the last material was furnished or service was performed. N.D. Cent.Code § 35–24–11 (1980).

Under section 545(2), the enforceability of the statutory lien depends upon its state of perfection as of the date the petition was filed. *See In re Pierce,* 809 F.2d 1356, 1361 (8th Cir.1987). In this case, Milchem did not take the necessary steps to perfect its lien by the date the petition for bankruptcy was filed. There is, however, a saving provision in section 546(b). Section 546(b) provides in pertinent part:

The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law

---

**4.** Section 547(c)(1) also provides that the debtor and the creditor must intend the transfer to be a contemporaneous exchange. The trustee points out that Milchem never did file a lien and therefore had no lien to release when the debtor paid the $101,681.57. Thus, according to the trustee, there was no "contemporaneous exchange for new value," intended or otherwise, as required by section 547(c)(1). A decision concerning this contention is deemed unnecessary, in light of

our conclusion that the "exchange" did not provide new value to the debtor.

**5.** The legislative history states: "Liens that are not perfected or enforceable on the date of the petition against a bona fide purchaser are voidable." S.Rep. No. 989, 95th Cong., 2d Sess. 85 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5871, 6327.

that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

 Even with this saving provision, Milchem cannot perfect its lien. The last date Milchem provided services was on February 24, 1982, therefore, under North Dakota law, Milchem was required to perfect its lien by August 24, 1982. However, Milchem never perfected his lien, consequently, the trustee had the power to avoid the fixing of the lien under section 545(2). Since the lien is avoidable under section 545, Milchem does not fall within the exception under section 547(c)(6) and therefore the trustee can avoid the transfers to Milchem as preferential.

### III.

Finally, Milchem contends that the bankruptcy court erred in its determination of the prejudgment interest rate. Title 28 U.S.C. § 1961 (1982 & Supp. IV 1986) is to be used for the calculation of prejudgment interest "unless the equities of a particular case demand a different rate." *In re Bloom,* 875 F.2d 224, 228 (9th Cir.1989) (quoting *Columbia Brick Works, Inc. v. Royal Ins. Co.,* 768 F.2d 1066, 1071 (9th Cir.1985)). Section 1961(a) provides in pertinent part:

> Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills *settled immediately prior to the date of the judgment.* [Emphasis added.]

Under this statute, the interest rate is calculated immediately prior to the date of judgment. The record indicates that the interest rate on the date of judgment was 7.14 percent. The interest rate on the dates of demand were 10.10 and 9.08 percent respectively. Nevertheless, the bankruptcy court awarded a flat rate of 10 percent. This court remands this case for determination of the proper interest rate in

accordance with Title 28 U.S.C. section 1961 pursuant to the Ninth Circuit's decision in *In re Bloom.*

The judgment of the district court is AFFIRMED in part, REVERSED in part and REMANDED as to the issue of the prejudgment interest rate.