**In re Paul M. RIGGS, Lisa A. Riggs, Debtors.**

**Nora E. JONES, Trustee, Plaintiff,**

**v.**

**SOCIETY BANK & TRUST, Defendant.**

**Bankruptcy No. 2–88–04275.**
**Adv. No. 2–90–0057.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

April 22, 1991.

Thomas R. Merry, Schottenstein, Zox & Dunn, Columbus, Ohio, for plaintiff.

Charles C. Postlewaite, Postlewaite & Smith, Columbus, Ohio, for defendant.

### OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

BARBARA J. SELLERS, Bankruptcy Judge.

#### I. *Preliminary Considerations*

The defendant in this adversary proceeding, Society Bank & Trust ("Society"), has

moved for summary judgment on its affirmative defense. The plaintiff, Nora E. Jones, trustee of the Chapter 7 bankruptcy estate of Paul and Lisa Riggs ("Trustee"), opposes that motion and has cross moved for summary judgment. All responsive pleadings have been filed and the matter is now before the Court for decision.

The Court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334. This is an action to recover a preference under 11 U.S.C. § 547 and, therefore, is a core proceeding which this bankruptcy judge may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(F).

## II. *Findings of Facts*

The relevant facts are undisputed and are as follows:

On April 3, 1987 Paul Riggs executed a note in favor of Trust Corp Bank, Ohio ("Trust Corp"), predecessor in interest to Society. Payment of that note was secured by an interest in a 1987 Ford F–250 pick-up truck. The proceeds from the loan evidenced by the note were used to purchase the truck and to purchase a credit life insurance policy for the obligation. Trust Corp's lien was noted on the truck's title on April 9, 1987. When Trust Corp became part of Society, ownership of the note and the lien passed to Society.

During the first half of 1988 Riggs fell behind in his $390.17 monthly payments to Society. At least one check was returned for insufficient funds. Riggs and Society then worked out an agreement under which Riggs could retain the truck and Society would forebear from exercising its right of repossession. That agreement called for the cure of payment arrearages and maintenance of current monthly payments. No written version of the agreement has been produced. However, records of subsequent arrearage payments exist and Riggs continued to drive the truck.

Riggs paid $1,229.04 on the account to Society on May 27, 1988. Riggs made additional payments of $290.68 on June 14, 1988, $185.00 on July 1, 1988, $172.00 on July 5, 1988, $200.00 on July 19, 1988, $150.00 on August 8, 1988 and $390.17 on August 15, 1988. A payment of $200.00 made on June 29, 1988 failed to clear the bank. Society applied those payments to back-due principal, interest and late fees. With the exception of the insufficient funds payment made June 29, 1988, the due date for the other payments under the workout arrangement is reflected on Society's records as May 18, 1988.

On August 24, 1988 Paul and Lisa Riggs filed a joint petition under Chapter 7 of the Bankruptcy Code. Subsequently, Society obtained relief from the automatic stay and repossessed and sold the truck. Society also terminated the credit life policy and obtained a refund of unearned premiums.

On December 5, 1988 the Trustee demanded that Society return the entire $2,535.89 transferred by payments to Society from the debtors within the 90 days prior to their bankruptcy filing. That turnover was not forthcoming and, on March 6, 1990, the Trustee filed this adversary proceeding seeking to avoid the transfers and to compel a turnover of the unearned credit life insurance premiums.

## III. *Legal Arguments*

For purposes of these summary judgment motions, the existence of preferential transfers apparently is presumed. Society's motion seeks a determination that the transfers were intended as and were contemporaneous exchanges for new value given to Riggs. The new value asserted by Society is its forbearance from exercising its rights of repossession after default. Therefore, should the transfers be preferences under 11 U.S.C. § 547(b), Society argues that it has affirmative defenses which excuse any recovery by the Trustee. The Trustee disputes this characterization of the exchanges and asserts that forbearance of an immediate right to repossess collateral is not new value within the meaning of 11 U.S.C. § 547(c)(1).

The motions being determined seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056. Rule 56 makes summary judgment appropriate if, after examination of all pleadings submitted in favor

of or in opposition to the motions, the Court finds there is no genuine issue as to any material fact and one of the movants is entitled to judgment as a matter of law.

As a preliminary matter, the Trustee asserts that Society's failure to produce any written agreement under which it agreed to forebear means there is a disputed fact. The Trustee believes that existence of that disputed fact causes Society to fail to carry its burden of proof in its motion seeking summary judgment. In essence the Trustee argues that without proof of a written agreement, Society can not argue that it extended new value to Riggs.

The Court believes that the existence or nonexistence of a written agreement is not a fact that is material under Federal Rule 56. Riggs was permitted to pay arrearages on past due monthly payments. It is also undisputed that Society did not repossess the vehicle prior to the bankruptcy filing. Therefore, Society did forebear, and that forbearance, rather than an agreement to forebear, is what Society contends is "new value." Accordingly, the Court believes both motions are appropriate for determination on a summary judgment basis.

## IV. *Issue Presented*

The sole issue presented by the cross motions is whether Society's acts of forbearance from repossessing its collateral in exchange for permitting the debtor to cure his payment defaults constitute contemporaneous exchanges for new value which would be excepted from recovery by the Trustee under the provisions of 11 U.S.C. § 547(c)(1).

## V. *Legal Discussion*

■ A preferential transfer which meets all requirements of 11 U.S.C. § 547(b) can be excepted from avoidance if any of the affirmative defenses provided by § 547(c) are met. The affirmative defense relied upon by Society, provided by § 547(c)(1), states in pertinent part:

  (c) The trustee may not avoid under this section a transfer—

    (1) to the extent that such transfer was—

      (A) intended by the debtor and the creditor to or for whose benefit such

transfer was made to be a contemporaneous exchange for new value given to the debtor; and

      (B) in fact a substantially contemporaneous exchange

11 U.S.C. § 547(c)(1).

"New value" is specifically defined in § 547(a)(2).

  (2) 'new value' means money or money's worth in goods, services or new credit or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation; ...

Case law interpreting § 547(c)(1) fairly consistently has held that forbearance from exercising a previously existing right is not "new value" within the meaning of §§ 547(a)(2) and (c)(1). See, e.g., *Bavely v. Merchants Nat'l Bank (In re Lario)*, 36 B.R. 582 (Bankr. S.D. Ohio 1983); *In the Matter of Duffy*, 3 B.R. 263 (Bankr. S.D.N.Y.1980); *Alithochrome Corp. v. East Coast Finishing Sales Corp. (In re Alithochrome Corp.)*, 53 B.R. 906 (Bankr. S.D.N.Y.1985); *A.I. Credit Corp. v. Drabkin (In re Auto–Train Corp.)*, 49 B.R. 605 (D.C.D.C.1985), *aff'd*, 800 F.2d 1153 (D.C.Cir.1986). Those cases and others which adopt their holdings find a lack of new value in a lessor's forbearance from exercising its right to re-enter and relet a premises (*Lario*, at 584), a lessor's forbearance from repossessing a rental vehicle and permitting a debtor to continue to drive that vehicle (*Duffy*, at 266), a creditor's forbearance from enforcing a judgment as part of an out-of-court settlement (*Alithochrome*, at 913) and a creditor's forbearance from terminating a financing arrangement for insurance premiums (*Auto–Train*, 49 B.R. at 612 and 800 F.2d at 1158).

The rationale which compels the results in *Lario*, *Duffy*, *Alithochrome*, *Auto–Train* and their progeny is based in part upon the exclusion from the definition of "new value" in § 547(a)(2) of an obligation

merely substituted for an existing obligation. Society's right to repossess its collateral upon default existed from the beginning of the relationship. Forbearance from exercising that preexisting right in return for payment of an overdue installment is not an extension of "new value," but is merely an obligation substituted for an existing obligation. Such substitution is specifically excepted in § 547(a)(2) from the definition of "new value." Further, the statutory definition of "new value" in the preference context is confined to the specific circumstances set forth in § 547(a)(2). *Energy Cooperative, Inc. v. SOCAP Intern'l, Ltd. (In re Energy Cooperative, Inc.)*, 832 F.2d 997 (7th Cir.1987). If the creditor has not given money or money's worth to the debtor in goods, services, new credit or the release of property, it has not given "new value" within the statutory meaning.

Society also argues that its forbearance has caused it to incur costs. Costs to Society because of its forbearance, however, also are not a proper focus for "new value." The new value given must be to the debtor and must replenish the estate for the value removed by the transfers. That result is distinguishable from a lessor's forbearance followed by continued beneficial occupation of leased premises without payment of additional rent. *See Remes v. Yeomans (In re Quality Plastics)*, 41 B.R. 241 (Bankr.W.D.Mich.1984). The time a lease obligation is incurred and the quantitative character of the continued occupancy benefit without payment differ from any "benefit" to a debtor who attempts to cure defaults in an installment loan in return for continued retention of the collateral which is security for that obligation.

It is also significant that Society, as the recipient of the transfer, is undersecured. There is a presumption, based upon ordinary business practices, that an undersecured creditor applies payments from a debtor to the unsecured portion of that obligation. *Belfance v. BancOhio Nat'l Bank (In re McCormick)*, 5 B.R. 726 (Bankr.N.D. Ohio 1980). That presumption

may be conclusive. *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1157 (D.C.Cir.1986); *Armstrong v. John Deere Co. (In re Gilbertson)*, 90 B.R. 1006 (Bankr.D.N.D.1988).

If an undersecured creditor, such as Society, were permitted to assert a "new value" exception to insulate otherwise avoidable preferential transfers, based only upon a forbearance from repossession for default, a primary purpose for the preference statute would be defeated. Such result would enable Society to receive payment on the unsecured portion of its claim within 90 days of a bankruptcy filing. Other similarly situated unsecured creditors would not have that opportunity. That last minute advantage over other similarly situated creditors would create inequity in distribution, which is precisely what the preference statute is intended to prevent.

In support of its position Society relies primarily upon a line of cases construing the "new value" exception in the context of releases of mechanics' or other statutory liens in exchange for payments from general contractor debtors. There is some inconsistency in those cases. *See Simon v. Engineered Protection Systems, Inc. (In re Hatfield Electric Co.)*, 91 B.R. 782, 784 (Bankr.N.D. Ohio 1988). In general, the results in those cases reflect distinctions based upon whether the transfer preferred the holder of an unsecured claim or merely gave effect to a creditor's present or potential claim against specific property where that property, absent the payment, would not have been available for unsecured creditors in the subsequent bankruptcy case. The decisions are premised more upon the "greater percentage" element of a preference in § 547(b)(5) than upon the "new value" exception. That distinction is not always clear in the cases, however.

At least two situations exist in which a payment from a debtor to a mechanic's lienor may not constitute a preference. The first happens when the mechanic's lienor is persuaded by a payment from the debtor not to file a lien against property owned by the debtor. The second situation occurs when the mechanic's lienor is persuaded by a payment from a debtor not to

file a lien against property owned by a third party who has rights against a retainage fund. If that retainage fund would come into the bankruptcy estate under applicable state law and any lien rights against it would be recognized in bankruptcy prior to the rights of unsecured creditors, the estate has not been depleted by the payment which eliminates the lien potential. In either situation payments from the debtor may not be avoidable transfers if the date of commencement of the work underlying the lien precedes the preference period. *See Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.)*, 792 F.2d 125 (10th Cir.1986); *Lang v. Heieck Supply (In the Matter of Anderson Plumbing Co.)*, 71 B.R. 19 (Bankr.E.D.Cal.1986).

If, however, the property owner is a third party who could assert only a general unsecured claim against the bankruptcy estate had the payments not been made, the transfers should be regarded as preferences not within the exception of § 547(c)(1). In that situation, if the debtor had not made the challenged payment and the mechanic's lienor had foreclosed its lien against the third party's property, the third party owner could assert only a claim in subrogation against the debtor's estate. That claim would be unsecured. Therefore, the debtor's estate would be depleted to the extent of the transfers made by the debtor to the lienor. *See Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 596 (11th Cir.1990); *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (In the Matter of Fuel Oil Supply & Terminaling, Inc.)*, 837 F.2d 224, 230 (5th Cir.1988); *Simon v. Engineered Protection Systems, Inc. (In re Hatfield Electric Co.)*, 91 B.R. 782, 785–86 (Bankr.N.D. Ohio 1988).

Society relies upon a case that does not recognize this distinction. *LaRose v. Crosby & Son Towing, Inc. (In re Dick Henley, Inc.)*, 38 B.R. 210 (Bankr.M.D.La.1984). *LaRose* appears to this Court to be incorrectly decided.

Society has argued that finding a preference where a debtor makes payments in return for a creditor's forbearance will compel creditors to repossess vehicles upon a debtor's first default, no matter how minor. This argument ignores the essential fact that an undersecured creditor wants payment, not the return of a vehicle for which the creditor must undergo expenses of repossession, storage and resale. Also, to the extent that such forbearance "works" because the payments are made more than 90 days before the bankruptcy filing, the creditor may retain the payment without any preference challenge. Therefore, this holding should not unduly discourage creditors and debtors from entering into agreements of this kind.

Based upon the foregoing, Society's motion for summary judgment is denied and the Trustee's cross motion seeking summary judgment is sustained. As previously agreed between the parties, the Trustee, within fifteen (15) days of the entry of this order, shall request a trial date or shall indicate to the Court a proposed disposition of this adversary proceeding.

IT IS SO ORDERED.