In re BOWNIC INSULATION
CONTRACTORS, INC.,
Debtor.

John Paul RIESER, Trustee, Plaintiff,

v.

LANDIS & GYR POWERS,
INC., Defendant.

Bankruptcy No. 3–89–00265.
Adv. No. 3–91–0008.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 5, 1991.

John Paul Rieser, Dayton, Ohio, for plaintiff.

John T. Ducker, Dayton, Ohio, for defendant.

## DECISION ON ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F)—proceedings to determine, avoid, or recover preferences.

This proceeding is presently before the court on the parties' cross-motions for summary judgment (Docs. 17–1, 18–1). The parties request that summary judgment be entered upon the issue of whether payments made to the defendant, Landis & Gyr Powers, Inc. (Powers), by the debtor, Bownic Insulation Inc. (Debtor), within ninety days of filing for relief under the Bankruptcy Code are avoidable by the plaintiff (Trustee) as preferences under 11 U.S.C. § 547. Powers asserts that these payments are not avoidable as preferences under 11 U.S.C. § 547(c)(1) and 11 U.S.C. § 547(c)(6) and under principles of equity.

## FACTS

The pleadings, including the Agreed Joint Statement Of Facts And Joint Exhibits (Doc. 14–1), establish the following relevant facts:

1) Osterfeld was a principal contractor with respect to the HVAC systems in a construction project with Montgomery County, Ohio on the Montgomery County Coroner Crime Lab (the Project). The Debtor was a subcontractor under Osterfeld and performed the insulation and air balance portion of Osterfeld's work on the Project. Powers provided labor and air balance materials in performance of a subcontract with the Debtor, specifically the Landis & Gyr Powers Contract 260–E–2448 (the Subcontract). Osterfeld provided payment and performance bonds on the Project in conformance with Ohio Revised Code § 153.54 *et seq.*

2) On January 24, 1989, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. As of this date, the Debtor was "insolvent" within the meaning of 11 U.S.C. § 101(32). Within ninety days before the date of filing, the Debtor transferred to Powers two payments in the sum of fifteen thousand three hundred seventeen dollars and ten cents ($15,317.10) (the Preference).

3) On July 10, 1990, this case was converted to a chapter 7.

4) The Debtor's creditors will receive, upon distribution in this chapter 7 proceeding, less than one hundred percent of their claims.

5) The total amount of the Subcontract was $45,938.00. Of this amount, the Debtor paid $30,142.90 to Powers. The remaining balance of $15,795.10 was paid postpetition pursuant to a court order in the Debtor's chapter 11 case entitled Notice and Joint Motion For Approval Of Settlement Among Bownic Insulation Contractors, Inc. and H.J. Osterfeld Mechanical Contractors, Inc. With Respect To Claim Of Landis & Gyr Powers, Inc. (the Settlement). Pursuant to this Settlement, approved by this court on January 17, 1990, Osterfeld was allowed to set-off the remaining $15,795.10 it owed the Debtor against the release of a lien Powers filed against public funds held by Montgomery County, Ohio and the release of a claim made by Powers against the bond provided by Osterfeld. These funds were remitted directly to Powers. The Trustee does not seek avoidance of this payment made to Powers.

6) A formal written demand for the Preference in the amount of $15,317.10 was made by the Trustee on December 13, 1990 (Doc. 18–1, affidavit). Powers did not remit any portion of this amount to the Trustee.

7) This adversary proceeding was commenced on January 22, 1991. Powers filed a Motion For Summary Judgment (Doc. 17–1). The Trustee filed a Motion For Summary Judgment Of Plaintiff, John Paul Rieser, Trustee (Doc. 18–1). In addition, the Trustee filed Response Of Plaintiff To Defendant's Motion For Summary Judgment (Doc. 19–1).

## ISSUES

1) Whether Powers' forbearance from including the amount it received as a preference in its lien against public funds held by Montgomery County, Ohio and in its claim against the bond held by Osterfeld constitutes "new value" under 11 U.S.C. § 547(c)(1).

2) Whether the preference payments made to Powers can be excepted from avoidance by the Trustee under 11 U.S.C. § 547(c)(6).

3) Whether preference payments may be excepted from avoidance under principles of equity.

4) If the preference is held avoidable, whether the Trustee is entitled to prejudgment interest from the date of his first formal demand for repayment of the preference.

## DISCUSSION

█ Summary judgment is governed by Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. Rule 7056(c), in relevant part, provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Materiality is determined by substantive law. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Additionally and more importantly, a dispute over a material fact must be genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable ... or is not significant-

ly probative ... summary judgment is appropriate.

*Id.,* 106 S.Ct. at 2511 (citations omitted). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden"; for example, "whether a jury [fact finder] could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not." *Id.* at 2513 (emphasis in original). *See generally Carl Subler Trucking, Inc. v. Kingsville–Ninety Auto/ Truck Stop, Inc. (In re Carl Subler Trucking, Inc.),* 122 B.R. 318, 320–21 (Bankr.S.D.Ohio 1990); *Talbot v. Warner (Matter of Warner),* 65 B.R. 512, 515–18 (Bankr.S.D.Ohio 1986). No genuine issue of material fact exists; thus, this proceeding is appropriate for summary judgment.

 The Trustee asserts that the payments made to Powers in the amount of $15,317.10 constitute an avoidable preference. To be a preference, a transfer must satisfy all the requirements of 11 U.S.C. § 547(b).[1] The Trustee bears the burden of proving that the transfer made to Powers is avoidable under section 547(b). 11 U.S.C. § 547(g). Based upon Powers' admissions (Doc. 3–1) and the agreed stipulations and exhibits (Doc. 14–1), this court finds that the payments made to Powers in the amount of $15,317.10 constitute a preference. However, preference payments may be excepted from avoidance if any of the affirmative defenses set forth in 11 U.S.C. § 547(c) are met. The party asserting a defense under 11 U.S.C. § 547(c)

bears the burden of proof. 11 U.S.C. § 547(g).

 Powers asserts that the two payments paid to it in the sum of $15,317.10 are not avoidable as preferences because, theoretically, had these payments not been made, this amount would have been included in the lien on public funds held by Montgomery County, Ohio and in the claim made on Osterfeld's bonding company. Powers posits that this forbearance constitutes "new value." The "new value" defense is set forth in 11 U.S.C. § 547(c)(1).[2] Section 547(c)(1) provides:

> (c) The trustee may not avoid under this section a transfer—
> (1) to the extent that such transfer was
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange[.]

To come within the parameters of § 547(c)(1), three requirements must be satisfied: "(1) the creditor must extend new value to the debtor; (2) both the creditor and the debtor must intend the new value and reciprocal transfer to be contemporaneous; and (3) the exchange must in fact be contemporaneous." *Cimmaron Oil Co., Inc. v. Cameron Consultants, Inc.,* 71 B.R. 1005, 1008 (N.D.Tex.1987). Thus, this court must first address whether "new value" was given to the Debtor.

"New value" is defined in § 547(a)(2) as follows:

1. Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made—
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

2. Powers does not set forth the specific "new value" defense it is asserting; however, the only "new value" defense applicable to this proceeding is 11 U.S.C. § 547(c)(1).

(a) In this section—

. . . .

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

Courts, in analyzing whether forbearance constitutes "new value," note the purpose underlying § 547 and the effect of forbearance on the value of the estate. *See Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 596 (11th Cir.1990); *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (Matter of Fuel Oil Supply & Terminaling, Inc.)*, 837 F.2d 224, 230 (5th Cir.1988); *Jones v. Society Bank & Trust (In re Riggs)*, 129 B.R. 494, 498 (Bankr.S.D.Ohio 1991); *In re Thomson McKinnon Sec. Inc.*, 125 B.R. 94, 97 (Bankr.S.D.N.Y.1991); *Simon v. Engineered Protection Systems, Inc. (In re Hatfield Elec. Co.)*, 91 B.R. 782, 785 (Bankr.N.D.Ohio 1988). In analyzing whether a party's forbearance diminished or enhanced the value of the estate, courts note whether the preference payment was received by a holder of a secured or unsecured claim. *See In re Chase & Sanborn Corp.*, 904 F.2d at 596–97; *Matter of Fuel Oil Supply & Terminaling, Inc.*, 837 F.2d at 229–30; *In re Riggs*, 129 B.R. at 496–98; *In re Hatfield Elec. Co.*, 91 B.R. at 785–86.

It is a basic axiom of bankruptcy law that a secured creditor is protected only to the extent of his security interest. If an agreement not to foreclose—to forbear—were treated as new value, however, then a debtor's payment of the entire debt (both secured and unsecured portions) in return for that agreement could be sheltered from the Code's preference provisions.

*Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1159 (D.C.Cir.1986); *see Wolinsky v. Central Vermont Teachers Credit Union*

*(In re Ford)*, 98 B.R. 669, 684 (Bankr.D.Vt. 1989).

This analysis was undertaken in *Hatfield*, a case involving facts similar to those contained in this proceeding. In *Hatfield*, the debtor, Hatfield Electric Company, entered into an agreement with EPS, its subcontractor, for installation of equipment in a building under construction owned by Meijer, Inc. Hatfield made a preference payment to EPS. Concomitantly, EPS executed a waiver of lien rights on the Meijer premises. Addressing the issue of whether EPS' waiver of its lien against the Meijer project constituted "new value," the court noted that under Ohio law, whether EPS waived or had not waived its lien rights on the Meijer property, Meijer could have only asserted a claim in subrogation against the debtor's estate. The court stated that a claim in subrogation is merely an unsecured claim and the debtor's "constructive release from that claim provides no tangible benefit to the estate, and payment in full therefor, depleted the estate to the detriment of the creditors." 91 B.R. at 785. The court concluded that the release was actual value received by the debtor but it was not "new value" as statutorily defined. *Id.* The *Hatfield* court further stated that such a payment conflicts with the principle underlying § 547—that of accomplishing equality of distribution to its creditors. *Id.* However, the court noted that the purpose underlying § 547 is not offended by payments to fully secured creditors because the estate is not diminished as a result of these payments. *Id.* at 786. The court further stated:

[T]o the extent the owner could withhold funds or retain payments due the debtor, which would have permitted satisfaction of EPS's lien claim, the estate was not depleted. The right of a third party to withhold or retain payment constructively released by debtor's payment in exchange for waiver of creditor's inchoate lien would come within the term "money" in the definition of "new value." Moreover, excepting payment under these circumstances conforms with the

purpose of preference avoidance and provides value to the estate.

*Id.*

The decisions cited by Powers, *Lang v. Heieck Supply (Matter of Anderson Plumbing Co.),* 71 B.R. 19 (Bankr.E.D.Cal. 1986), *Cooley v. General Elevator Corp. (Matter of Advanced Contractors),* 44 B.R. 239 (Bankr.M.D.Fla.1984), and *LaRose v. Crosby & Son Towing, Inc. (In re Dick Henley, Inc.),* 38 B.R. 210 (Bankr.M.D.La. 1984), fail to consider whether a preference benefitted or diminished the value of the estate by preferring an unsecured or a secured claim holder and fail to consider the purpose and policy underlying the preference provisions. This court finds more persuasive the reasoning and holdings in *In re Chase & Sanborn Corp., Matter of Fuel Oil Supply & Terminaling, Inc., Cimmaron, In re Riggs,* and *In re Hatfield Elec. Co.*

■ Based upon the foregoing, this court concludes that Powers failed to establish that its forbearance from including the funds it received as a preference in its lien and bond claim constitutes "new value" within the meaning of § 547(c)(1). The critical inquiry in this proceeding is not whether Powers possessed lien or bond claims, but *whether Powers possessed lien or bond claims against property of the estate, making Powers a secured claim holder.* Powers failed to establish that it held a secured claim against property of the estate and that, but for its forbearance, it would have received funds from property of the estate. If Powers had included this amount in its lien and bond claim it may have received full payment, but Powers would not have received payment from property of the estate. Powers' claim would have been paid from the public funds held by Montgomery County, Ohio or Osterfeld's bonding company, and the payor would have then had a right of subrogation. A claim in subrogation is only an unsecured claim, and release of an unsecured claim does not benefit the debtor's

estate. Moreover, this conclusion is in conformance with the principle underlying § 547.

Further, Powers' defense of "new value" must fail to the extent it is based upon the premise that, but for receipt of the preference payment, it would have included this amount in its perfected lien and bond claim and would have received payment of this claim from Osterfeld pursuant to the Settlement. Powers failed to establish that Osterfeld possessed any additional funds that constituted property of the estate beyond the $15,795.10 it received in the Settlement. Thus, Powers' secured claim against property of the estate was no greater than $15,795.10. Any claim in an amount greater than $15,795.10 would have constituted an unsecured claim against the estate and release of this unsecured claim would not have provided any tangible value to the Debtor's estate.

■ In addition, Powers asserts that the preference is not avoidable under 11 U.S.C. § 547(c)(6). In support of its assertion under § 547(c)(6),[3] Powers cites *Cimmaron,* 71 B.R. at 1010–11. In *Cimmaron,* the court concluded that, although § 547(c)(6) excepts only the "fixing" of a lien from avoidance, legislative history indicates that Congress intended to include in this statutory language "transfers that preclude imposition of such liens." 71 B.R. at 1010. The holding in *Cimmaron* is not applicable to this proceeding because it contained facts in which a lien would have been perfected against the debtor's property, not against non-debtor property. *See In re Hatfield Elec. Co.,* 91 B.R. at 786. Section 547(c)(6) refers to the "fixing of a statutory lien under section 545." Section 545 states that "[t]he trustee may avoid the fixing of a statutory lien *on property of the debtor* ...." Powers' lien would not have been perfected against the debtor's property; thus, § 547(c)(6) is not applicable.

Powers additionally asserts that the Trustee should be estopped from avoiding

---

**3.** (c) The trustee may not avoid under this section a transfer—

. . . .

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title[.]

the Preference under principles of equity. Powers states that, if it had not been paid the two payments, this amount would have been added to the amount paid to it post-petition and it would have been protected by the Settlement and Order which states that the "Debtor, the United States Trustee, and any trustee subsequently appointed by Debtor be forever barred from seeking recovery of payment made to Landis & Gyr Powers, Inc. . . . ." Further, Powers asserts that the Preference should not be avoided because the parties cannot be put into the same condition that they would have been in prior to the Debtor's filing for relief under the Bankruptcy Code.

The bankruptcy court's "equitable powers of section 105(a) may only be used in furtherance of the goals of the [Bankruptcy] Code." *Childress v. Middleton Arms, L.P. (In re Middleton Arms Ltd. Partnership)*, 934 F.2d 723, 725 (6th Cir. 1991). Powers' suggested use of this court's equitable powers to allow it to retain a preference payment is contrary to the goals of the Bankruptcy Code as codified under section 547. If the bankruptcy court used its equitable powers to disallow avoidance of a preference for equitable reasons, the purpose underlying § 547 would be vitiated. Section 547 was enacted to "accomplish proportionate distribution of the debtor's assets among its creditors, and therefore to prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all." *Milchem, Inc. v. Fredman (In re Nucorp Energy, Inc.)*, 902 F.2d 729, 733 (9th Cir.1990). "[T]he preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally." H.R.Rep. No. 595, 95th Cong. 1st sess. 177–78 (1977), U.S.Code Cong. & Admin.News, 1978, pp. 5787, 6138. *See Bluegrass Ford–Mercury, Inc. v. Farmers Nat'l Bank of Cynthiana (In re Bluegrass Ford–Mercury, Inc.)*, 942 F.2d 381, 385 (6th Cir.1991).

The Trustee requests that he be awarded prejudgment interest on the preference payment made in the amount of $15,317.10 from December 13, 1990, the date of its first formal demand for repayment (Doc. 18–1, p. 20–21). As this court has previously held in *Foreman Indus., Inc. v. Broadway Sand & Gravel (Matter of Foreman Indus., Inc.)*, 59 B.R. 145, 156–57 (Bankr.S.D.Ohio 1986), a trustee, in an action to avoid a preference, is entitled to prejudgment interest at the rate set forth in 28 U.S.C. § 1961(a) from the date of the demand for repayment or, if no formal demand was made, from the date of the filing of the complaint. *Accord Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 465 (6th Cir.1991); *Sprowl v. Miami Valley Broadcasting Corp. (In re Federated Marketing, Inc.)*, 123 B.R. 265, 271 (Bankr. S.D.Ohio 1991).

Accordingly, the Motion For Summary Judgment Of Plaintiff, John Paul Rieser, Trustee (Doc. 18–1) is GRANTED. The Motion For Summary Judgment (Doc. 17–1) filed by the defendant, Landis & Gyr Powers, Inc., is DENIED. The defendant, Landis & Gyr Powers, Inc., is ordered to pay the plaintiff, John Paul Rieser, Trustee, fifteen thousand three hundred seventeen dollars and ten cents ($15,317.10) plus the applicable rate of interest in accordance with 28 U.S.C. § 1961(a) from December 13, 1990.

SO ORDERED.