### In re Jeff MARLEWSKI and Linda Marlewski, Debtors.

### Jeff MARLEWSKI and Linda Marlewski, Plaintiffs,

v.

### GREAT LAKES HIGHER EDUCATION CORPORATION, Defendant.

**Bankruptcy No. 93–20473–JES. Adv. No. 93–2242.**

United States Bankruptcy Court, E.D. Wisconsin.

May 19, 1994.

1989). But future services that consist of nonlegal tasks should be disallowed.

William H. Green, Milwaukee, WI, for debtors/plaintiffs.

Lloyd J. Blaney, Madison, WI, for defendant.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Linda L. Marlewski, formerly Linda L. Anderson ("Debtor"), seeks a determination that her student loan obligation to Great Lakes Higher Education Corp. ("Great Lakes") is a dischargeable debt. Debtor asserts that under § 523(a)(8)(A) of the Bankruptcy Code,[1] her debt first became due

---

1. § 523. Exceptions to discharge.

(a) A discharge under § 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than

more than seven years before the filing of her Chapter 7 bankruptcy petition and is therefore dischargeable.[2] This court has been presented with this issue on Great Lakes' motion for summary judgment. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The parties have stipulated to all of the material facts; therefore, this case is ripe for disposition by summary judgment.

Debtor obtained two $2,500 student loans to finance her education at the University of Wisconsin–Oshkosh. The first loan was acquired in November of 1983 and was followed by a second loan obtained in September of 1984. The parties agree that Debtor's obligation to pay both loans commenced on August 15, 1985 and that the original payoff date was July 18, 1995. The parties also agree that the loans went into default on March 18, 1986 and that Great Lakes thereafter obtained a default judgment against Debtor on April 10, 1989.

On February 1, 1993, Debtor and her husband, Jeff Marlewski, filed a joint petition in bankruptcy under Chapter 7.[3] When the petition was filed, the loan balance due to Great Lakes was $6,029.52.

Mathematically, the period from August 15, 1985, when the loans first became due, to February 1, 1993, when Debtor filed her bankruptcy petition, exceeded seven years. However, the key question is whether there were any applicable suspensions in the repayment period within the meaning of § 523(a)(8)(A) which reduced the repayment period to less than seven years.

Great Lakes asserts that, two agreements (dated February 18, 1989 and April 4, 1991) entered into by Great Lakes and the Debtor after the loans went into default, each produced a "suspension of the repayment period." Great Lakes contends that the total period of repayment between August 15, 1985 and February 1, 1993, after deductions for the suspensions of repayment period, is 6 years, 4 months, and 20 days. Debtor, however, counters that neither agreement effected a "suspension of repayment period." Therefore, by the time she filed her bankruptcy petition, the 7–year repayment period had already run.

A review of the pertinent documents involved reveals the following:

| Nature of Document | Monthly Payment and Loan Payoff Date |
| --- | --- |
| Original Promissory Notes dated November, 1983 and September, 1984 | $50 commencing 8/15/85 and ending 7/18/95 |
| Agreement Dated February 18, 1989 | $60 commencing 12/15/89 and ending 5/15/90 with a balloon payment |
| Agreement dated April 4, 1991 | $200 commencing 3/15/91 and ending 7/15/91 with a balloon payment |

The following critical language appears in both the February 18, 1989 and the April 4, 1991 agreements:

It is agreed that, in the event that payment in full of this obligation is extended from the original payoff date as calculated by the plaintiff prior to suit, the period of time during which this extension is in effect shall constitute a suspension of the repayment period under 11 U.S.C. § 523(a)(8)(A).

7 years (exclusive or any applicable suspension of the repayment period) before the date of the filing of the petition. 11 U.S.C. § 523 (1993).

**2.** Initially, debtor also argued that under the doctrine of equitable estoppel Great Lakes is precluded from asserting that this debt is non-dischargeable. That argument was subsequently abandoned.

**3.** Jeff Marlewski is not liable on the debt to Great Lakes.

Great Lakes maintains that this language triggered a suspension of the repayment period. Great Lakes asserts that the term "original payoff date" refers to March ˙18, 1986, when the loans went into default. Therefore, Great Lakes continues, since the periods of time during which payments were to be made under the two agreements extended the repayment date beyond March 18, 1986, the period of time during which the February 18, 1989 and April 4, 1991 agreements were in effect must be deducted from the total repayment period.

Debtor takes the position that the language "original payoff date" in the two agreements can only refer to July 18, 1995, when the original note became due, rather than the March 18, 1986 default date. Debtor asserts that, under a plain reading of this language, only if the original payoff date of July 18, 1995 had been extended could a "suspension of the repayment period" have taken place, but that did not happen. Instead, what happened was that Debtor defaulted in her payments to Great Lakes, causing the loan balance to be accelerated on March 18, 1986, a date earlier than the original payoff date. Debtor therefore argues that, because the original payoff date was never extended, no suspension of the repayment period occurred.

In light of the particular language Great Lakes chose to employ in its February 18, 1989 and April 4, 1991 agreements, Debtor's argument is more persuasive. The language crafted by Great Lakes of *"original* payoff date" (emphasis added) leaves no doubt that this can only mean July 18, 1995, and there was no extension of this date.

Great Lakes' argument would also be more convincing if the February 18, 1989 and April 4, 1991 agreements called for a cessation of payments or for a reduction in payments for a fixed period of time. Under *In re Eckles,* 52 B.R. 433 (E.D.Wis.1985), this would have tolled the 7–year repayment period under § 523(a)(8)(A). However, the monthly payments were neither suspended nor reduced. Instead, the monthly payments which the debtor had originally been required to pay were increased in amounts and the time within which the debtor was required to complete the payments was shortened.

■ Great Lakes urges that a cessation in its collection efforts during the time the increased monthly payments were to have been made was a "forbearance" on its part and was sufficient to bring about a suspension in repayment period. That argument is rejected for several reasons. Nothing in the agreements compelled Great Lakes to stop its collection efforts while the February 18, 1989 and April 4, 1991 agreements were in effect. Voluntarily refraining from enforcing collection during a period while a debtor is obligated to make increased monthly payments over a period of time shorter than originally agreed upon is not forbearance. Moreover, forbearance by a creditor from enforcing a judgment has been held not to constitute new value for preference purposes under § 547. *In re Alithochrome Corp.,* 53 B.R. 906 (Bankr.S.D.N.Y.1985); *In re Allegheny Intern., Inc.,* 145 B.R. 823 (W.D.Pa. 1992); *In re Riggs,* 129 B.R. 494 (Bankr. S.D.Ohio 1991). By the same token, even if it is established that there was forbearance in this case, it does not serve as a basis for "suspension of repayment period" for purposes under § 523(a)(8)(A).

■ This court is sensitive to the need for maintaining the integrity of the student loan program. It fully recognizes that measures have been taken through Congressional legislation making it more difficult for student loans to be discharged.[4] Nonetheless, this court cannot ignore the clear language in the agreement adopted by Great Lakes in this case. The "original payoff date" can only mean July 18, 1995, when the loan was originally due. Even, for the sake of argument, if the meaning of "suspension of the repayment period" as used in the February 18, 1989 and April 4, 1991 agreements, is ambiguous, such ambiguity must be construed against the party who drafted it. *In re Smith Management, Inc.,* 8 B.R. 346 (Bankr.W.D.Wis.1980); *In re Wickersheim,* 107 B.R. 177 (Bankr.

4. The Student Loan Default Prevention Act of 1990 made student loans non-dischargeable in Chapter 13. The Crime Control Act of 1993 increased the minimum number of years that a student loan must be in repayment before it can be discharged from 5 years to 7 years. ˙

E.D.Wis.1989); *Crescent Corp. v. Procter & Gamble Co.*, 898 F.2d 581 (7th Cir.1990). In this case, Great Lakes was the drafter of the agreements. The court therefore holds that the 7–year repayment period under § 523(a)(8)(A) had expired by the time the Debtor filed her Chapter 7 petition, and Great Lakes' motion for summary judgment is denied.

■   The debtor did not file a motion for summary judgment. In an appropriate case, the court may *sua sponte* grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment. *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388 (5th Cir.1989). This is such a case. Debtor is entitled to summary judgment as a matter of law, and Debtor's obligation to Great Lakes is discharged pursuant to § 523(a)(8)(A).